UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUNDEXCHANGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-999 (RBW) |
| ) | |
| MUSIC CHOICE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, SoundExchange, Inc. ("SoundExchange"), brings this civil action pursuant to the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C § 101 (2018), against the defendant, Music Choice, to recover unpaid royalties. See Complaint ("Compl.") ¶¶ 32–41. Currently pending before the Court is Defendant Music Choice's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Def.'s Mot." or the "motion to transfer"). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the defendant's motion to transfer.

## I. BACKGROUND

The following facts are derived from the plaintiff's Complaint.

Pursuant to the Copyright Act, "certain music service providers" may obtain "statutory licenses that permit them to use," as part of the services they provide, "sound recordings protected by federal law without having to negotiate license agreements with rights owners."

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Defendant Music Choice's Answer to Complaint ("Answer"); (2) the Memorandum of Points and Authorities in Support of Defendant Music Choice's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Def.'s Mem."); (3) SoundExchange's Memorandum of Points and Authorities in Opposition to Defendant Music Choice's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Pl.'s Opp'n"); and (4) Defendant Music Choice's Reply in Further Support of its Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Def.'s Reply").

Compl. ¶ 2.  Music service providers can obtain a statutory license "by filing a Notice of Use in the Copyright Office[.]"  Id.  "Thereafter, a statutory licensee can use sound recordings . . . to its commercial advantage so long as it complies with the requirements of the statutory license."  Id.  The Copyright Act requires that statutory licensees "pay specified royalties on a timely basis[,]" id., and "report their usage of recordings[,]" id. ¶ 17.  The royalty rates that statutory licensees must pay are determined by the Copyright Royalty Board (the "Board"), which consists of three Copyright Royalty Judges appointed pursuant to the Copyright Act.  See id. ¶ 3.  The resulting royalty rates are then set forth in regulations promulgated by the Board.  See id. (citing provision of the Copyright Act).

The plaintiff is a non-profit organization headquartered in the District of Columbia that has been designated by the Board "as the sole entity in the United States to collect royalties from statutory licensees and distribute these royalties to performing artists and copyright owners[.]"  Id. ¶ 11.  The plaintiff has authority to initiate independent audits of music service providers to verify the royalty statements and payments made to the plaintiff.  See id. ¶ 7 (citing 37 C.F.R. § 384.6 (2020)).

The defendant, a digital music service provider headquartered in Horsham, Pennsylvania, uses statutory licenses to provide various digital music services.  See Compl. ¶ 4.  The defendant, through its audio service known as the "Business Establishment Service," "provides multiple channels of commercial-free, radio-like music," which are "broadcast to subscribing retail establishments and other businesses, to play on-premise as background music for the enjoyment of customers."  Def.'s Mem. at 1; see Compl. ¶ 4.

In 2016, the plaintiff initiated an audit of the defendant, using the independent auditor Prager Metis CPAs, LLC ("Prager Metis").  See Compl. ¶ 7.  According to the plaintiff, the

2

defendant purportedly "failed to make the required payments to [the plaintiff] by the applicable due dates[,]" and "systematically underpaid statutory royalties" for its Business Establishment Service during the period from January 1, 2013, through December 31, 2016. Id.

The plaintiff initiated this civil action in this Court on April 10, 2019, seeking recovery of the unpaid royalties and late fees under 37 C.F.R. § 384.3, 384.4, as well as unpaid verification fees under 37 C.F.R. § 384.6(g). See id. ¶¶ 32–41. On June 24, 2019, the defendant filed its answer, and thereafter moved to transfer this case to the Southern District of New York on venue grounds under 28 U.S.C. § 1404(a). See generally Def.'s Mot. The motion to transfer is the subject of this Memorandum Opinion.

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a) (2018). The decision to transfer a case is discretionary, and a district court must conduct "an individualized, 'factually analytical, case-by-case determination of convenience and fairness.'" New Hope Power Co. v. U.S. Army Corps of Eng'rs, 724 F. Supp. 2d 90, 94 (D.D.C. 2010) (quoting Sec. & Exchange Comm'n v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978)). The moving party "bears the burden of establishing that the transfer of th[e] action is proper." Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

## III. ANALYSIS

The defendant argues that transferring this case to the Southern District of New York is appropriate because "the witnesses and evidence likely to be relevant to this dispute" are located

in New York and Horsham, Pennsylvania, rather than the District of Columbia, and that the Southern District of New York "has a stronger interest in and connection to this dispute than this District." Def.'s Mem. at 2. The plaintiff responds that the defendant has not satisfied its burden to justify transferring this case and "override [the plaintiff's] choice of its home forum to litigate," where "[a]ll of the relevant facts . . . in connection with this dispute took place in the District of Columbia or in the Eastern District of Pennsylvania," rather than in the Southern District of New York. Pl.'s Opp'n at 1, 8.

When determining whether to transfer a case on venue grounds, the Court must initially determine that the proposed transferee court is located "in a district where the action might have been brought." Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n, 856 F. Supp. 2d 186, 190 (D.D.C. 2012) (Walton, J.) (quoting Montgomery v. STG Int'l., Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008)). If the action could have been brought in the proposed transferee court, the Court then

> considers both the private interests of the parties and the public interests of the courts[.] The private interest considerations include: (1) the plaintiff['s] choice of forum, unless the balance of convenience is strongly in favor of the defendant[]; (2) the defendant['s] choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee[] [court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Shapiro, Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d 66, 71 (D.D.C. 1998).

The Court first addresses whether this action could have been brought in the Southern District of New York, the proposed transferee court.[2] Pursuant to 28 U.S.C. § 1400(a), the applicable federal venue law for claims arising under the Copyright Act, "[c]ivil actions . . . arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a); see Bigelow v. Garrett, 299 F. Supp. 3d 34, 48–49 (D.D.C. 2018); see also W. Coast Prods., Inc. v. Does, 1-1911, Civ. Action No. 11-1687 (ABJ), 2011 WL 11049265, at *1 n.1 (D.D.C. Oct. 25, 2011) (noting in context of request for jurisdictional discovery that 28 U.S.C. § 1400(a) is "the exclusive venue provision for actions brought under the Copyright Act"). Here, the defendant maintains an office in New York City, which the defendant represents is its largest office and principal place of business. See Def.'s Mem. at 12. Therefore, the defendant resides in the Southern District of New York, because it is subject to the court's personal jurisdiction. See 28 U.S.C. § 1391(c)(2) (stating that a corporate defendant or other entity with capacity to be sued "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"); Zhu v. Fed. Hous. Fin. Bd., No. 03-5297, 2004 WL 1249788, at *2 (D.C. Cir. June 7, 2004) ("The district court has personal jurisdiction over individuals domiciled in, organized under the laws of, or maintaining a principal place of business in the District of Columbia.") (citing D.C. Code § 13-422)). Accordingly, the Court concludes that this action could have properly been brought in the Southern District of New York.[3]

---

[2] Neither party disputes that this action could have been brought in the Southern District of New York. See Def.'s Mem. at 18; Pl.'s Opp'n at 3 n.1.

[3] In its answer, the defendant contests the propriety of venue in the District of Columbia. See Answer at ¶ 9 ("[The defendant] denies that 28 U.S.C. §1391 is applicable to this case."). However, the Court notes that venue is indeed proper in this District as well. The defendant "admits that its contacts with the District of Columbia in connection
(continued . . .)

5

The Court next addresses the private and public interest factors identified in § 1404(a) in turn.

## A. The Private Interest Factors

### 1. The Parties' Choices of Forum and Where the Claims Arose

The defendant argues that the plaintiff's choice of forum is entitled to little deference, because although the plaintiff's headquarters is located the District of Columbia, this forum "has little to no factual nexus to the case," Def.'s Mem. at 21, and "the acts giving rise to [the plaintiff's] claims all occurred outside of the District of Columbia[,]" id. at 24. The plaintiff responds that its choice of forum in this matter is entitled to deference because of the plaintiff's "meaningful relationship with the District of Columbia," Pl.'s Opp'n at 4, and because "all of [the plaintiff's] conduct related to this dispute was based in the District of Columbia," id. at 5.

Generally, the plaintiff's choice of forum is given substantial deference, and therefore, the movant requesting a transfer of venue "bears a heavy burden of establishing that [the] plaintiffs' choice of forum is inappropriate." Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (citations omitted). District courts defer to a plaintiff's choice of forum unless that forum has "no meaningful relationship to the plaintiff's claims or to the parties," United States ex rel. Westrick v. Second Chance Body Armor, Inc., 771 F. Supp. 2d 42, 47 (D.D.C. 2011), or if "most of the relevant events occurred elsewhere," Aftab v. Gonzalez, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (quoting Hunter v. Johanns, 517 F. Supp. 2d 340, 344 (D.D.C. 2007)).

---

(. . . continued)
with providing its Business Establishment Service to subscribers in this District and the payments it makes to [the plaintiff] are sufficient to subject [the defendant] to personal jurisdiction in this Court for the limited purpose of this action." Id. Accordingly, pursuant to 28 U.S.C. § 1391(c)(2), which provides that a corporate defendant or other entity with capacity to be sued "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[,]" the defendant is deemed to reside in the District of Columbia, and venue is therefore proper in this District pursuant to 28 U.S.C. § 1400(a).

Here, the Court finds that the plaintiff's choice of forum is entitled to deference. As an initial matter, it is not disputed that the District of Columbia is the plaintiff's home forum, which weighs in favor of deference being given to its decision to bring this case in this district. See Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) ("[T]he plaintiffs' choice of forum is frequently accorded deference, particularly where the plaintiffs have chosen their home forum and many of the relevant events occurred there.").[4] Moreover, there is a substantial nexus between this district and the factual circumstances underlying the plaintiff's allegations of underpayment of statutory royalties. The allegations that are at the heart of the plaintiff's claims concern the sufficiency of the defendant's royalty payments to the plaintiff's License Management Department, in its District of Columbia office. See Pl.'s Opp'n at 5–6. Additionally, the plaintiff's decision-making, correspondence, and conduct relevant to this action all occurred in the District of Columbia, including its initiation and involvement in the verification audit which led to the discovery of the alleged underpayments. See id. The Court finds that these events constitute a substantial portion of the relevant events giving rise to the plaintiff's claims, such that this case is not analogous to cases where the forum has "no meaningful relationship to the plaintiff's claims or to the parties[.]" United States ex rel. Westrick, 771 F. Supp. 2d at 47; see Thayer/Patricof Educ. Funding, L.L.C., 196 F. Supp. 2d at 34–35 (denying transfer of the plaintiff's action against the defendant

---

[4] The defendant contends that a plaintiff's choice of forum is "given less weight when the plaintiff is suing in a representative capacity[.]" Def.'s Mem. at 22 (citing Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 157 (D.D.C. 2008)). However, the defendant's argument is inapplicable here, as the plaintiff is not suing in a representative capacity. While the plaintiff collects and distributes royalties for others in its day-to-day operations, it is an "independent nonprofit organization," Compl. ¶ 11, that "is named in the [Copyright Royalty Board's] regulations as the sole entity designated . . . to receive royalty payments and reports of sound recording usage from statutory licensees." Pl.'s Opp'n at 6 (emphasis in original). Accordingly, the plaintiff is "suing in its own name . . . [and] none of the recipients of [the royalty] distributions will need to participate in this proceeding." Pl.'s Opp'n at 6.

corporation, and concluding that the events at issue had "a significant connection" with the District of Columbia where, although alleged accounting fraud occurred in Kansas, the defendant allegedly made misrepresentations in financial statements attached to an agreement that was executed in the District of Columbia, and the plaintiff allegedly relied on these misrepresentations in the District of Columbia). While the defendant may be correct that some of its actions relevant to the parties' dispute occurred in New York, this being the location where the defendant's playback servers are located, and where "the ephemeral copies at issue are created, stored, and used to transmit [the defendant's] broadcasts[,]" Def.'s Reply at 8, the fact that some events occurred in New York does not detract from the substantial nexus that still exists between this action and the District of Columbia, see Jalloh v. Underwood, 300 F. Supp. 3d 151, 156 (D.D.C. 2018) (finding that despite the fact that "a substantial part" of the alleged actions took place in a different district, there were still considerable, meaningful ties between the plaintiff's dispute and the District of Columbia, which entitled the plaintiff's choice of forum to be accorded deference).[5]

---

[5] Both parties also acknowledge that a substantial portion of the relevant facts in this action also occurred in Horsham, Pennsylvania. Pennsylvania was the location where the defendant's "initial decision-making regarding how royalties for [its] Business Establishment Service [are] properly [ ] calculated took place," Def.'s Mot. at 14, as well as where the defendant "prepar[ed] and submit[ted] monthly statements and payments to [the plaintiff]," id. at 14–15. However, despite the plaintiff's argument that the Eastern District of Pennsylvania is therefore the judicial district located at "the site of [the defendant's] own activities related to this case," rather than the Southern District of New York, Pl's Opp'n at 7, "[a] claim may arise in more than one forum, just as proper venue may exist in more than one judicial district[,]" Detroit Int'l Bridge Co. v. Gov't of Canada, 787 F. Supp. 2d 47, 52 (D.D.C. 2011), and where claims arise from actions in several fora, "this factor does not weigh in favor or against transfer[,]" Bederson v. U.S., 756 F. Supp. 2d 38, 48 (D.D.C. 2010). Therefore, because some of the underlying developments giving rise to the parties' dispute occurred not only in this District, but also in Pennsylvania and New York, the Court concludes that the factor of where the claims arose remains neutral. Accordingly, the defendant's arguments regarding this factor are insufficient to overcome the deference accorded to the plaintiff's choice of forum. See Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (denying transfer where "the operative facts and impact of this case [were] linked to" the District of Columbia as well as the District of Montana, and concluding that because "the plaintiffs' choice of forum deserves deference," ultimately "the plaintiffs' interests prevail[ed]").

Accordingly, the defendant has not "carried [its] burden of demonstrating that the plaintiff['s] choice of forum is unsuitable," Smith v. Yeager, 234 F. Supp. 3d 50, 58 (D.D.C. 2017) (Walton, J.), and the Court therefore concludes that this case presents a sufficiently substantial nexus to this district to warrant giving deference to the plaintiff's choice of forum.

### 2. The Convenience of the Parties and Witnesses

The defendant argues that transferring this case to the Southern District of New York would promote convenience because (1) "the Southern District of New York is clearly more convenient for [the defendant's] witnesses," as the courthouse in that district is closer in mileage to the defendant's New York and Pennsylvania offices, see Def.'s Mem. at 25; and (2) "key non-party witnesses may be unavailable in this District," because the Southern District of New York has "subpoena power over third-party witnesses" in New York, whereas the District of Columbia does not, id. at 26, 28. The plaintiff responds that the defendant has failed to demonstrate that the net convenience to the parties would increase if this case is transferred, as the defendant "entirely discounts the additional, reciprocal burden that transfer would place upon [the plaintiff]," Pl.'s Opp'n at 9–10, and that the defendant has failed to establish that any witnesses would refuse to travel to the District of Columbia or that the witness' testimony could not be obtained by other means, see id. at 11–12.

In considering the convenience of the parties and the witnesses, courts acknowledge that "[u]nless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." Kotan v. Pizza Outlet, Inc., 400 F. Supp. 2d 44, 50 (D.D.C. 2005) (quoting Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1139 (6th Cir. 1991)). Therefore, "for this factor to weigh in favor of transfer, litigating in the [proposed] transferee district must

not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties." Westrick, 771 F. Supp. 2d at 48. The Court must also consider "the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996) (footnote omitted). Therefore, for this factor to weigh in the defendant's favor, the defendant must demonstrate "that these witnesses will refuse to appear if the trial is held in the District of Columbia" and "show[] that the third-parties' testimony could not be obtained by other means, such as written or videotaped depositions." Shapiro, Lifschitz & Schram, P.C., 24 F. Supp. 2d at 72–73; see Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 33 ("To support its request for transfer under section 1404(a), a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction.").

The Court first addresses the convenience of the parties and concludes that this factor does not favor either side, as both parties would face some inconvenience if the case were tried in the competing fora. The defendant's argument that New York is the more convenient forum due to its proximity to the defendant's New York City and Horsham offices merely shifts the burden of traveling from the defendant to the plaintiff, which does not result in a net increase in convenience. Although litigating this case in New York would be more convenient for the defendant, making it unnecessary for any of its employees to travel from New York or Pennsylvania to the District of Columbia, "transferring venue would deprive [the plaintiff] of the very same benefit," Pl.'s Opp'n at 10, as the plaintiff would face similar transportation and other expenses to bring its employees to New York. Therefore, the Court concludes that the defendant

has failed to demonstrate that transfer would generate an overall increase in convenience for both parties.

The convenience of the witnesses presents a closer question. In support of its argument in favor of transferring this case due to the convenience of the witnesses, the defendant has identified three third-party witnesses from Prager Metis, the accounting firm that conducted the verification, who worked out of Prager Metis's office in New York City. See Def.'s Mem. at 27–28. One of these witnesses, Lewis Stark, is a partner who supervised the verification of the defendant's payments, and currently still works in Prager Metis's New York City office. See Def.'s Mot., Declaration of Paul Fakler (June 24, 2019) ("Fakler Decl.") ¶ 15. The other two witnesses, Aleka Mazarakis and Michael Gibson, "appear[] to no longer be employed by Prager Metis[,]" although they "continue to work in, and therefore likely reside near, the New York City area." Def.'s Mot., Fakler Decl. ¶¶ 14, 15. On the record currently before the Court, the Court finds that the defendants have not established the unavailability of Mr. Stark if the case remains in this district, as "the record does not reflect that [he] would be [unable or] unwilling to appear in the District of Columbia." Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 32–33 (declining to infer that Kansas-based Ernst & Young engagement partner, as well as eight subordinate accountants, would be unwilling to testify in the District of Columbia). However, the Court finds that "[t]here may be good reason" why it is conceivable that the two witnesses who are no longer employed by Prager Metis "would not be willing to testify in the District of Columbia." Id. at 33; see Def.'s Reply at 15 (noting that the two former Prager Metis employees "no longer have any responsibilities to Prager Metis and would be forced to take time off from their new employment" to testify). However, even if the Court finds that a witness is unlikely to testify, the "analysis does not end there," as "[e]ven witnesses unwilling to appear at trial can be

11

subjected to videotape depositions that adequately capture their demeanor and credibility for purposes of a trial." Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 34; see, e.g., Dealtime.com, Ltd. v. McNulty, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000) (witness unavailability would "not tip the balance in favor of a transfer in light of the option of videotaping testimony of witnesses unwilling to travel to another forum to testify"). While the defendant asserts that live testimony is preferred to depositions or written testimony, see Def.'s Reply at 17, the defendant has not shown that the potential unavailability of witnesses alone is sufficient to weigh more heavily than the other factors opposing transfer.[6] Accordingly, the Court concludes that while "the likely absence of live testimony from [a third-party witness] may favor transfer somewhat, by itself it is not enough to trump the deference to which [the] plaintiff's choice of forum is entitled." Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 34.

### 3. The Ease of Access to Proof

The defendant argues that litigating this case in the Southern District of New York would lead to easier access to proof, because "[m]ost [] documents relating to its Business Establishment Service are located in its New York Office," and "[the defendant's] playback servers [are] located in New York City and cannot be easily transported or accessed elsewhere." Def.'s Mem. at 29. In response, the plaintiff argues that "[the defendant] appears to keep

---

[6] Although the defendant correctly notes that this Court has approved transfers in other cases where witnesses would be unavailable or highly inconvenienced by denial of transfer, see Def.'s Mem. at 28; Def.'s Reply at 14, these cases also featured other strong interests supporting transfer that are absent here, see, e.g., McClamrock v. Eli Lilly and Co., 267 F. Supp. 2d 33, 37–40 (D.D.C. 2003) (Walton, J.) (approving transfer after finding that there was no factual nexus between the plaintiff's claims and the District of Columbia, that witnesses would be greatly inconvenienced by the case being litigated in the District of Columbia rather than in North Carolina, and that the public interest factors also weighed in favor of transfer); Pyrocap Int'l Corp. v. Ford Motor Co., 259 F. Supp. 2d 92, 95–99 (D.D.C. 2003) (approving transfer after finding that there was no factual nexus between the District of Columbia and the dispute, that key witnesses would be inconvenienced or unavailable to testify in the District of Columbia, and that there was doubt generally as to whether venue could be established in the District of Columbia under the statute relied upon by the plaintiffs); Chung v. Chrysler Corp., 903 F. Supp. 160, 164 (D.D.C. 1995) (approving transfer where the plaintiff had no connection to the District of Columbia, had identified no witnesses with strong connections to the District of Columbia, and where the two key witnesses identified by the defendant lived or worked in the transferee forum).

documents and records related to its payment of royalties in Pennsylvania," Pl.'s Opp'n at 12, which means that transfer to New York would not significantly address ease of access to proof. Moreover, the plaintiff notes that even if the defendant has some relevant documents in New York, or the fact that some discovery will have to be conducted there, considerable, if not most, of the "discovery in this matter will surely be electronic, making the physical location of documents and data immaterial." Id.

"Modern technology allows most documentary evidence to be easily transferred," and "the location of documents is much less important to determining the convenience of the parties than it once was." Taylor v. Shinseki, 13 F. Supp. 3d 81, 90 (D.D.C. 2014). In light of these technological developments, and the fact that it appears that not all relevant sources of proof are in fact located in the Southern District of New York, such as documentation of legal and accounting decisions that are located in Horsham, Pennsylvania, the Court concludes that this factor weighs neither for nor against transfer. See Ross v. Davis, 74 F. Supp. 3d 231, 238 (D.D.C. 2014) (concluding that where "relevant events occurred in [multiple] locales," the "ease of access to sources of proof" factor "splits down the middle").

**B.     The Public Interest Factors**

**1. The Relative Familiarity of the Courts with Governing Law**

The defendant argues that "the Southern District of New York may have more familiarity with the copyright issues involved in the present dispute," because "the Southern District of New York is one of the top jurisdictions nationally in terms of the number of copyright cases heard per year." Def.'s Mem. at 30. The plaintiff responds that the defendant's argument is not applicable here. Pl.'s Opp'n at 14.

"[A]ll federal courts are presumed to be equally familiar with the law governing federal statutory claims[.]" Forest Cty. Potawatomi Cmty. v. United States, 169 F. Supp. 3d 114, 119 (D.D.C. 2016) (quoting Miller v. Insulation Contractors, Inc., 608 F. Supp. 2d 97, 103 (D.D.C. 2009). However, if "one circuit [or district] is more familiar with the same parties and issues or related issues than other courts[,]" then that factor weighs in favor of giving that court jurisdiction over the dispute. Alabama v. U.S. Army Corps of Eng'rs, 304 F. Supp. 3d 56, 67 (D.D.C. 2018).

Here, because this case involves a federal statutory claim, the presumption of this factor's neutrality will only be overcome by a showing that a district court or circuit has more familiarity with the parties or issues present in the case. While the Southern District of New York may have a higher volume of general copyright cases, the plaintiff is correct that "this is not a typical copyright infringement case," but rather "a case concerning the [Copyright Royalty Board's] intricate administrative regulations concerning payment of [business establishment services] royalties." Pl.'s Opp'n at 14. The defendant has not shown that the Southern District of New York has any specific familiarity with the parties or with the Copyright Royalty Board's regulations regarding statutory license royalties, in order to defeat the presumption that both courts have equivalent expertise. In fact, the defendant concedes that the plaintiff has initiated "two lawsuits based on alleged underpayment of statutory royalties[,]" in this district, Def.'s Reply at 19, but fails to identify any cases in the Southern District of New York that demonstrate that court's greater familiarity with the governing law and the parties sufficient to justify the transfer of this case. Therefore, the Court concludes that this factor weighs neither for nor against transfer.

**2. The Relative Congestion of the Transferee and Transferor Courts**

The defendant contends that the Southern District of New York is less congested than this district, and therefore, that this factor weighs in favor of transfer. See Def's Mot. at 30. The plaintiff responds that "there is effectively no difference between the congestion" in the dockets of the transferor and proposed transferee courts. Pl's Opp'n at 13, 15.

"In this district, potential speed of resolution is examined by comparing the median filing times to disposition in the courts at issue." Fed. Hous. Fin. Agency, 856 F. Supp. 2d at 194 (quoting Spaeth v. Mich. State Univ. Coll. of Law, 845 F. Supp. 2d 48, 60 (D.D.C. 2012)). However, "[a]bsent a showing that either court's docket is substantially more congested than the other, this factor weighs neither for nor against transfer." Id. (quoting Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs, 893 F. Supp. 2d 49, 57 (D.D.C. 2012). According to the latest statistics concerning federal judicial caseloads, the median time from filing to disposition in this district was 5.1 months, compared to 6.6 months in the Southern District of New York. See United States District Courts – National Judicial Caseload Profile, United States Courts, 2, 11 (Sept. 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.[7] Because the difference between these two figures is not significant, the Court finds that neither court's docket is substantially more congested than the other. Accordingly, the Court concludes that this factor weighs neither for nor against transfer.[8]

---

[7] The Court may take judicial notice of information on official public websites of government agencies. See Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("[C]ourts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."); see also Fed. R. Evid. 201(d) (providing that "a court may take judicial notice at any stage of the proceeding").

[8] The defendant argues that the time from filing to trial is a better metric in this case than the time from filing to disposition, because the filing to disposition time period "averages are diluted by the large volume of cases that are

(continued . . .)

### 3. The Local Interest in Deciding Local Controversies at Home

The defendant argues that there are local interests that favor transferring this case to New York. Specifically, the defendant argues that the Southern District of New York "has a greater interest in the outcome of this litigation since it is the principal place of business of [the defendant] and where many of the actions giving rise to the allegations of [the plaintiff's] Complaint occurred[,]" Def.'s Mem. at 31–32, and that New York "has a greater interest at stake given the far greater presence of record companies and recording artists there whose interests [the plaintiff] represent[s][,]" id. at 32. The plaintiff responds that the defendant's "underpayment of royalties affects more than 'only the local residents' of New York[,]" Pl.'s Opp'n at 15 (citation omitted), as the plaintiff "distributes royalties to copyright owners and recording artists nationwide, including in the District of Columbia," id. at 16.

"Courts have recognized that justice is promoted by having a localized controversy resolved in the region it impacts, and have consistently transferred cases when the challenged action predominately affects local interests." Alabama, 304 F. Supp. 3d at 67 (citations and internal quotation marks omitted). Where a case "has national implications," however, the case cannot be considered the type of purely 'localized controversy' that would warrant transfer to the

---

(. . . continued)
resolved shortly after filing through settlement, which [the defendant] does not expect to happen here." Def.'s Reply at 20. Even considering this metric, however, the Court still concludes that there has been no showing that this district is substantially more congested than the Southern District of New York. According to the latest data, the median time from filing to trial in this district was 46.7 months, compared to 31 months in the Southern District of New York. See U.S. District Courts – National Judicial Caseload Profile at 2, 11 (June 30, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf. While these statistics suggest that cases proceed to trial roughly fifteen months sooner in the Southern District of New York than in this district, the Court takes note that these "statistics provide, at best, only a rough measure of the relative congestion of the dockets in the two districts." United States v. H & R Block, Inc., 789 F. Supp. 2d 74, 84–85 (D.D.C. 2011) (treating the relative congestion of dockets as a neutral factor in the transfer analysis, noting that these statistics "do not, for example, reflect the differences in the caseloads carried by different individual judges in each district," and that "[a]ny disparities between the lengths of time from filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases.").

local district court." Forest Cty Potawatomi Cmty, 169 F. Supp. 3d at 118; see, e.g., Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10, 17 (D.D.C. 2000) (denying venue transfer where agency action was "a decision of national significance").

Here, the Court agrees with the plaintiff that this case is not a purely "localized controversy." Alabama, 304 F. Supp. 3d at 67. While the defendant contends that the Southern District of New York has a greater interest in this litigation because many of the defendant's actions relevant to the dispute occurred in the Southern District of New York, many relevant actions also occurred in Pennsylvania, where the defendant's headquarters are located, and the District of Columbia, where the plaintiff's headquarters are located. See Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70, 75–76 (D.D.C. 2013) (declining to transfer case involving questions of "national significance" where there were strong connections linking the District of Columbia to the controversy, including the fact that "[t]wo of the four plaintiff organizations have their headquarters in the District [of Columbia], and the others have offices here"). Moreover, the issues in this case have the potential to affect the interests of individuals and corporations far beyond the Southern District of New York. Although the defendant may be correct in its assertion that there are more record companies and recording artists in the Southern District of New York than this district, this is not a situation where only individuals and corporations in the Southern District of New York are affected, or even where they will be the predominately affected population. The federal statutory royalty scheme at issue here has national implications, as the plaintiff "distributes statutory royalties to numerous recording artists and copyright owners nationwide." Pl.'s Opp'n at 6. Accordingly, this litigation could affect the distribution of vast amounts of royalties among copyright owners and corporations across the country—not just those concentrated in the Southern District of New York. See Greater

Yellowstone Coal. v. Kempthorne, Civ. Action Nos. 07-2111 (EGS), 07-2112 (EGS), 2008 WL 1862298, at *7 (D.D.C. Apr. 24, 2008) (denying transfer of a challenge to the regulation of recreational snowmobile use in Yellowstone National Park in light of "the national scope of the environmental issues at stake," and the fact that "[t]he management of the National Parks and the interpretation of federal environmental statutes are nationwide concerns," not localized controversies). Therefore, the Court concludes that this factor weighs neither for nor against transfer.

In sum, the balance of the private and public interest factors outlined in § 1404(a) weighs in favor of the plaintiff's position. With the exception of the convenience to the defendant's witnesses, which weighs marginally in favor of transfer but fails to outweigh the deference to which the plaintiff's choice of forum is entitled, none of the other private and public interest factors weigh in favor of transferring this case to the Southern District of New York. The Court therefore concludes that transferring this case to the Southern District of New York would not be in the interest of justice. Accordingly, the Court will deny the defendant's motion to transfer.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes the Southern District of New York is not an appropriate forum for the adjudication of this case. Accordingly, the Court denies the defendant's motion to transfer this case to the Southern District of New York.

**SO ORDERED** this 14th day of February, 2020.[9]

REGGIE B. WALTON  
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.