# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| |
|---|
| SOUNDEXCHANGE, INC. |
| Plaintiff, |
| v. |
| MUSIC CHOICE |
| Defendant. |

Civil Action No. 1:19-cv-999-RBW

## DEFENDANT MUSIC CHOICE'S SUPPLEMENTAL
## BRIEF REGARDING PRIMARY JURISDICTION

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.      The Board Does Not Have Jurisdiction Over This Matter ............................................... 3

      A.      The Board's Jurisdiction Related to the Business Establishment Service
License is Limited to Periodic Ratemaking Proceedings ...................................... 4

      B.      This Matter Does Not Fall Within the Board's Ratemaking Jurisdiction ............. 4

      C.      This Matter Does Not Fall Within the Board's Continuing Jurisdiction ............... 7

            1.      SoundExchange is not seeking the correction of a technical error
made by the Board or a change to the regulations based upon
unforeseen circumstances in this case .......................................................... 7

            2.      The Board's continuing jurisdiction to reopen its own prior
proceedings does not extend to proceedings conducted by other
distinct agencies ........................................................................................... 8

            3.      The Board's continuing jurisdiction to provide interpretive
guidance does not extend to regulations that were not the subject of
a contested proceeding before the Board and were neither drafted
nor substantively considered by the Board .................................................. 9

II.      Even if the Board Might Have Limited Jurisdiction to Offer Interpretive
Guidance, the Court Should Decline to Invoke the Primary Jurisdiction Doctrine ......... 15

      A.      The Non-Exclusive Primary Jurisdiction Factors Weigh Against Referral
to the Board ....................................................................................................... 16

      B.      Efficiency and Fairness Would be Better Served by a Streamlined
Resolution in This Case ..................................................................................... 19

      CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC, Inc. v. PrimeTime 24,*
    184 F.3d 348 (4th Cir. 1999) ...................................................................................17

*APCC Servs., Inc. v. WorldCom, Inc.,*
    305 F. Supp. 2d 1 (D.D.C. 2001) .......................................................................19, 22

*Arista Records, LLC v. Launch Media, Inc.,*
    578 F.3d 148 (2d Cir. 2009)...................................................................................17

*AT & T Commc'ns v. City of Dallas,*
    8 F. Supp. 2d 582 (N.D.Tex.1998) ........................................................................22

*Blackman v. D.C.,*
    456 F.3d 167 (D.C. Cir. 2006) .................................................................................9

*CBS Broad., Inc. v. EchoStar Commc'ns Corp.,*
    265 F.3d 1193 (11th Cir. 2001) .............................................................................17

*EMI Entm't World, Inc. v. Karen Records, Inc.,*
    603 F. Supp. 2d 759 (S.D.N.Y. 2009)...............................................................15, 17

*Fox Television Stations, Inc. v. FilmOn X, LLC,*
    150 F. Supp. 3d 1 (D.D.C. 2015) ...........................................................................17

*Krukas v. AARP, Inc.,*
    376 F. Supp. 3d 1 (D.D.C. 2019) ...........................................................................16

*Lipton v. MCI Worldcom, Inc.,*
    135 F. Supp. 2d 182 (D.D.C. 2001) ............................................................15, 16, 18

*Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.,*
    720 F.2d 1319 (D.C. Cir. 1983) .............................................................................20

*SoundExchange, Inc. v. Muzak LLC,*
    854 F.3d 713. (D.C. Cir. 2017) ....................................................................7, 13, 17

*SoundExchange, Inc. v. Muzak LLC,*
    No. 15-CV-0476-RCL, 2019 WL 3997468 (D.D.C. Aug. 23, 2019) ...............14, 17

*SoundExchange, Inc. v. Sirius XM Radio Inc.,*
    65 F. Supp. 3d 150 (D.D.C. 2014) ............................................................ 12, 17, 21

*Total Telecomms. Servs., Inc. v. Am. Tel. & Tel. Co.*,
    919 F. Supp. 472 (D.D.C. 1996) ................................................................19

*United States v. Bessemer & Lake Erie R. Co.*,
    717 F.2d 593 (D.C. Cir. 1983) ...................................................................15

*United States v. Elrod*,
    627 F.2d 813 (7th Cir.1980) ......................................................................20

*United States v. Philip Morris USA Inc.*,
    686 F.3d 832 (2012)...................................................................................15

*United States v. Ron Pair Enters., Inc.*,
    489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989).........................9

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275, 278-85 (2d Cir. 2012) ........................................................17

*Yesh Music LLC v. Amazon.com, Inc.*,
    249 F. Supp. 3d 645 (E.D.N.Y. 2017) ...............................................14, 17

**Statutes**

17 U.S.C. § 111.................................................................................................17

17 U.S.C. § 112.................................................................................4, 6, 8, 19

17 U.S.C. § 114...................................................................................................8

17 U.S.C. § 119.................................................................................................17

17 U.S.C. § 801.........................................................................................4, 6, 11

17 U.S.C. § 803.........................................................................4, 5, 7, 8, 12, 21

**Regulations**

37 C.F.R. § 370.3(g) ..................................................................................14, 17

37 C.F.R. § 382.6 .......................................................................................14, 17

37 C.F.R. § 384.3 ...............................................................................................1

**Legislative Material**

Judiciary Committee, Copyright Royalty and Distribution Reform Act of 2003,
    H.R. Rep. No. 108-408 (2004).....................................................................8

## Other Authorities

*Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. 56,725 (Nov. 30, 2017) (to be codified at 37 C.F.R. pt. 382) ..................................................................6, 10, 16, 19, 21

*Determination of Reasonable Rates and Terms for the Digital Performance of Sound Recordings and Ephemeral Recordings*, 67 Fed. Reg. 25,240 (July 8, 2002) (to be codified at 37 C.F.R. pt. 261) ...............................................................................8

*Determination of Royalty Rates and Terms for Ephemeral Recording and Webcasting Digital Performance of Sound Recordings (Web IV)*, 81 Fed. Reg. 26,316 (May 2, 2016) (to be codified at 37 C.F.R. pt. 380) .................................................6, 16

*Determination of Royalty Rates and Terms for Making Ephemeral Copies of Sound Recordings for Transmission to Business Establishments (Business Establishments III)*, 83 Fed. Reg. 60,362 (Nov. 26, 2018) (to be codified at 37 C.F.R. pt. 384) .......................................................................................................................11

*Mechanical & Digital Phonorecord Delivery Rate Determination Proceeding*, 74 Fed. Reg. 4510 (Jan. 26, 2009) (to be codified at 37 C.F.R. pt. 385) .....................................11

*Mechanical and Digital Phonorecord Delivery Rate Determination Proceeding*, 74 Fed. Reg. 6832 (Feb. 11, 2009) .......................................................................................10

Oxford English Dictionary Online, https://www.oed.com/view/Entry/40270?rskey=ydl0c4&result=3&isAdvanced=false#eid ...............................................................................................................9

*Scope of the Copyright Royalty Judges' Continuing Jurisdiction*, 80 Fed. Reg. 25,333, (May 4, 2015) .........................................................................................10, 12

*Brief for the United States as Amicus Curie in Support of Neither Party, SoundExchange, Inc. v. Muzak, LLC*, No. 16-7041, 2017 WL 34707 (D.C. Cir. Jan. 3, 2017) ...........................................5, 13, 16, 18

*Supplemental Brief of Appellant SoundExchange, Inc., SoundExchange, Inc. v. Muzak, LLC*, No. 16-7041, 2017 WL 34708 (D.C. Cir. Jan. 3, 2017) ......................................................5, 19

## INTRODUCTION

Pursuant to this Court's June 8, 2020 Order, ECF No. 22, Music Choice respectfully submits its Supplemental Brief addressing the following two questions posed by the Court:  1) whether the Copyright Royalty Board has jurisdiction over this matter; and 2) whether the Court should submit the questions of regulatory interpretation raised in this case to the Copyright Royalty Board under the doctrine of primary jurisdiction. *Id*. The answer to both questions is "no."

SoundExchange has invoked the jurisdiction of this Court to adjudicate a private royalty dispute, which hinges on the interpretation of "Gross Proceeds" as defined in the regulations for the statutory license for Business Establishment Services pursuant to 37 C.F.R. § 384.3. Only the Court has jurisdiction to adjudicate the dispute raised in SoundExchange's Complaint. And the questions presented by this case – interpretation of federal regulations and statutes and application of that authority to the unique facts of this case – are of the sort that district courts routinely resolve.

In contrast, the Copyright Royalty Board (the "Board") cannot adjudicate this dispute because it does not have *any* authority to enforce statutory license regulations or resolve payment disputes. Congress granted the Board limited jurisdiction to preside over certain rate-setting or royalty distribution proceedings relating to the Business Establishment Service license and other statutory licenses. Both SoundExchange and the Board itself have repeatedly acknowledged that this jurisdiction does not extend to private royalty payment disputes, or any other enforcement actions, which is why SoundExchange filed its case in this Court rather than attempt to open a proceeding before the Board.

Furthermore, the Board's continuing jurisdiction to reopen and make corrections to its

*own* prior determinations does not give it continuing jurisdiction over the Business Establishment Service license regulations in dispute. Those regulations were drafted and originally implemented by a different and now-defunct agency, the Copyright Arbitration Royalty Panels, almost twenty years ago. The Board itself has never presided over a contested Business Establishment Service license rate setting proceeding, because the original regulations have been carried forward by industry settlement in every subsequent rate period. Consequently, there is no prior Board proceeding in which it substantively addressed or considered the relevant regulations and which it could therefore reopen under its continuing jurisdiction.

Moreover, the Board's continuing jurisdiction is further limited to the purposes of correcting technical errors or addressing unforeseen circumstances. Although its error-correcting jurisdiction may in certain instances extend to providing interpretive guidance for its own ambiguous regulations – if it has unique expertise and working experience informing that guidance – such jurisdiction cannot extend to regulations it did not create or scenarios where it has never presided over any contested proceeding or heard any evidence relating to the regulations at issue.

Even if the Board might possibly have limited jurisdiction to provide interpretive guidance with respect to the disputed regulations, the Court should exercise its discretion not to invoke the primary jurisdiction doctrine in this case. None of the relevant factors weigh in favor of such a stay. The interpretive issues raised in this case, namely interpreting various statutory and regulatory provisions of the federal copyright law, are well within the conventional expertise of this Court. The regulations in dispute were not created by the Board, nor has the Board ever presided over any contested proceeding related to the Business Establishment Service license, so it does not have any unique expertise that would materially aid the Court. Adjudicating the

private dispute in this Court will not raise any obvious or substantial danger of inconsistent rulings. And SoundExchange has neither sought any relief from the Board relating to this dispute nor moved this Court for a stay or referral.

Finally, staying this case to refer the interpretive issue to the Board will unduly prejudice Music Choice by introducing a delay – likely of years – while the Board considers the issue, after which the case will wind up back in this Court in the exact same procedural posture. In the one case where primary jurisdiction has ever been invoked to refer an interpretive issue to the Board, it took over three years for the Board to issue a decision. And the Board held that its jurisdiction was strictly limited to providing general interpretive guidance – it left any application of that guidance and any consideration of the facts to the district court after the referral. In this case, the parties will still have to proceed through full discovery and the rest of the litigation process after that multi-year delay. The likelihood of such a long delay weighs strongly against invocation of primary jurisdiction. This is particularly true where, as here, any guidance provided will be of limited scope and utility – given the Board's lack of experience with the license and regulations in dispute.

This Court – and only this court – has the jurisdiction and ability to render a complete adjudication of this matter, which it can and should do. Fairness and efficiency weigh in favor of this Court exercising its discretion to simply adjudicate the entire matter now in a single streamlined proceeding, rather than referring any part of it to the Board.

## **ARGUMENT**

## I.   THE BOARD DOES NOT HAVE JURISDICTION OVER THIS MATTER

The Copyright Royalty Board is an administrative agency with limited jurisdiction, set by statute. Although the Copyright Act authorizes the Board to conduct a few different types of administrative proceedings relating to various statutory licenses, the Board's jurisdiction with

respect to the Business Establishment Service license at issue in this case is strictly limited to conducting proceedings every five years to adjust the rates and terms for that license if – and only if – SoundExchange and the various licensees cannot reach a voluntary agreement on those rates and terms.  17 U.S.C § 803(b)(3) (Board to set a procedural schedule only if parties have not settled at the end of initial negotiating period); § 801(b)(7)(A)(ii) (if parties settle at any time during proceeding, Board must adopt regulations and other terms of settlement unless at least one party to proceeding objects and Judges find that the settlement is unreasonable in light of record). The Board also has continuing jurisdiction to reopen its own prior proceedings, but only for very limited purposes.  17 U.S.C. § 803(c)(4). This limited jurisdiction does not include, under any circumstance, enforcement or other applications of the license regulations, or monetary disputes between licensing collectives and licensees. The Board's statutorily limited jurisdiction therefore does not extend to this case, which is a private commercial dispute for money damages.

### A. The Board's Jurisdiction Related to the Business Establishment Service License is Limited to Periodic Ratemaking Proceedings

The jurisdiction and functions of the Copyright Royalty Board are established in 17 U.S.C. § 801. The only power given to the Board in connection with the Section 112(e) Business Establishment Service license at issue in this case is the power to adjust the rates and terms for that license during regularly scheduled proceedings if the parties do not reach voluntary agreement. *See* 17 U.S.C. § 801(b)(1).  *See also* 17 U.S.C. § 112(e)(3).

The Board also has narrow authority to exercise continuing jurisdiction over its own prior proceedings – but only for two specific purposes. The Board may "issue an amendment to a written determination to correct any technical or clerical errors" in its own prior determination; and may "modify the terms, but not the rates, of royalty payments in response to unforeseen

circumstances that would frustrate the proper implementation of" its prior determination. 17

U.S.C. § 803(c)(4).

To be clear, the Copyright Royalty Board is not an enforcement agency. Indeed, the sole

basis SoundExchange gives for its standing in this case is SoundExchange's own alleged

statutory authority to enforce the license regulations at issue in this Court. Complaint ¶ 11.  Even

under the most expansive reading of the Board's statutory jurisdiction, the Board has no

jurisdiction to enforce the regulatory terms of the Business Establishment Service license.

SoundExchange, the Register of Copyrights, and the Copyright Royalty Board itself agree on

this key principle, as they argued on appeal in a recent royalty underpayment case similar to this

one. *See Brief for the United States as Amicus Curie in Support of Neither Party* ("*United States

Amicus Br.*"), *SoundExchange, Inc. v. Muzak, LLC*, No. 16-7041, 2017 WL 34707 at **11-12

(D.C. Cir. Jan. 3, 2017) (arguing that the Board does not have any jurisdiction outside of its

ratemaking and distribution functions); *Supplemental Brief of Appellant SoundExchange, Inc.*

("*SoundExchange Suppl. Br.*"), *SoundExchange, Inc. v. Muzak, LLC*, No,. 16-7041, 2017 WL

34708 at *5 (D.C. Cir. Jan. 3, 2017) ("In contrast with agencies that play an enforcement role,

however, the Board does not have authority to enforce the 'binding' rates and terms that it

sets."), *8 (the Copyright Act "does not authorize the Board to take any action to enforce the

rates and terms it sets.").

Likewise, the Board does not have jurisdiction to resolve disputes between

SoundExchange and individual licensees, nor to award money damages of any kind. As the

Board itself has acknowledged, "the Judges 'lack enforcement jurisdiction and, therefore, can

neither order compliance nor fix penalties.' . . . Lacking those enforcement and remedial powers

necessarily leads to the conclusion that the Judges' jurisdiction does not extend to application

and factual dispute resolution regarding application of the regulations." *Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. 56,725, 56,727 (Nov. 30, 2017). The Board has also expressly acknowledged that it has no jurisdiction to address payment disputes – such as this one – that arise from SoundExchange's audit of a statutory licensee's royalty payments, noting that "any attempt to seek a remedy based upon an auditor's findings, and any attempt to challenge those findings, must be made in a court of competent jurisdiction, or through any private alternative dispute resolution procedure to which the affected parties may have agreed." *Determination of Royalty Rates and Terms for Ephemeral Recording and Webcasting Digital Performance of Sound Recordings (Web IV)*, 81 Fed. Reg. 26,316, 26,401 n.228 (May 2, 2016).

### B.     This Matter Does Not Fall Within the Board's Ratemaking Jurisdiction

This case is a private action for money damages brought under the Copyright Act generally, alleging underpayment of royalties. *See* Complaint ¶¶ 1-7. It is not a ratemaking proceeding to adjust the rates and terms applicable to the Business Establishment Service license nor a reopening of a prior ratemaking proceeding. The dispute in this case involves the application of terms already set, not the modification of those terms.

SoundExchange filed its Complaint in this Court on April 10, 2019, purporting to state causes of action under the Copyright Act for the underpayment of royalties due under the statutory license for Business Establishment Services. Nowhere does the Complaint seek any modification of the rates or terms applicable to that license (nor could it, as such ratemaking proceedings occur on a statutorily specified schedule. *See* 17 U.S.C. §112(e)(3)). Rather, the dispute here concerns a private claim for damages based on the application of those rates and terms, as they exist today. *See* Complaint ¶¶ 24-29. This dispute arises neither as part of, nor in a proceeding related to, any ratemaking over which the Board may preside, and thus does not fall within the Board's authority under 17 U.S.C.§ 801 or § 112(e). Given the nature of the specific

claims presented by SoundExchange in this case, this matter is not within the ratemaking jurisdiction of the Board.

C.      **This Matter Does Not Fall Within the Board's Continuing Jurisdiction**

This matter also falls well outside the Board's limited continuing jurisdiction. Congress vested the Board with a narrow grant of continuing jurisdiction, permitting it to reopen its prior proceedings to correct technical or clerical errors in its own prior written determinations; or modify terms (but not rates) in its own prior determinations due to unforeseen circumstances. *See* 17 U.S.C. § 803(c)(4). This case does not ask the Court to undertake either of those tasks.  And such an undertaking by the Board would be inappropriate because the dispute in this case is entirely divorced from the ratemaking context. *See SoundExchange, Inc. v. Muzak LLC*, 854 F.3d 713, 718. (D.C. Cir. 2017). Moreover, to the extent the Board's continuing jurisdiction may under certain circumstances extend to reopening a prior, fully litigated proceeding to provide interpretive guidance relating to regulations that the Board itself drafted after evaluating extensive testimony and evidence, this case falls well outside that jurisdiction. The regulatory language at issue in this case was drafted and issued by a different agency, before the Board even existed. That language was carried forward in later rate periods, but only pursuant to settlement agreements – which the Board had no authority to modify – and never as the product of a contested proceeding or evidentiary record.

1.      **SoundExchange is not seeking the correction of a technical error made by the Board or a change to the regulations based upon unforeseen circumstances in this case**

In this case, SoundExchange seeks money damages to correct the alleged underpayment of royalties pursuant to already established rates and regulations. *See* Complaint ¶¶ 1-7. It does not ask the Board to correct some error in a prior determination or in the regulations themselves. It does not argue that there are any unforeseen circumstances that would render the application of

the codified terms of the licenses inappropriate. The relief requested by SoundExchange is simply not within the authority Congress granted the Board in exercising its continuing jurisdiction. *See* 17 U.S.C. § 803(c)(4).

> **2.**     **The Board's continuing jurisdiction to reopen its own prior proceedings does not extend to proceedings conducted by other distinct agencies**

As noted above, the Board did not draft or create the regulation at issue – it was created and first issued by a different agency entirely, in a proceeding almost 20 years ago. After the Business Establishment Service license was first enacted, the initial rate proceeding was adjudicated by a Copyright Arbitration Royalty Panel. *See Determination of Reasonable Rates and Terms for the Digital Performance of Sound Recordings and Ephemeral Recordings*, 67 Fed. Reg. 25,240 (July 8, 2002) (to be codified at 37 C.F.R. pt. 261). That proceeding resulted in the first codified regulations for the Business Establishment Service license, which contained the language at issue in this case. *See id*. at 25,263; *see also, id*. at 25,268 ("'Gross proceeds' shall mean all fees and payments, including those made in kind, received from any source before, during or after the License term which are derived from the use of copyrighted sound recordings pursuant to 17 U.S.C. 112(e) for the sole purpose of facilitating a transmission to the public a performance of a sound recording under the limitation on the exclusive rights specified in section 114(d)(1)(c)(iv)."). Those same regulations remain in effect today, untouched by the Board.

And unlike the Board, which has continuing jurisdiction to reopen its own prior proceedings for limited purposes, the Copyright Arbitration Royalty Panels had no continuing jurisdiction over their ratemaking proceedings after the final determination was issued. *See* Judiciary Committee, Copyright Royalty and Distribution Reform Act of 2003, H.R. Rep. No. 108-408, at 33 (2004) (noting that the Copyright Arbitration Royalty Panels did not have "the power to amend the terms subsequent to a final determination" and that the statutes governing

the Board would include a provision granting the Board such power over its future determinations). There is nothing in the continuing jurisdiction provision even hinting that Congress intended to grant the Board jurisdiction to interpret the regulations a different agency crafted – much less retroactive jurisdiction to reopen proceedings conducted before a different agency under a statute withholding continuing jurisdiction from that agency.

Certainly, the statute's *continuing* jurisdiction provision cannot reasonably be read to give the Board jurisdiction to reopen a proceeding conducted by a different agency. It is axiomatic that statutory language should be interpreted according to the plain meaning of the words used. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 1031, 103 L. Ed. 2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (citation omitted); *Blackman v. D.C.,* 456 F.3d 167, 176 (D.C. Cir. 2006) ("If the language has a 'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.'") (citations omitted). It would be nonsensical to invoke doctrine of *continuing* jurisdiction to reopen a proceeding over which the Board itself did not preside. The Board cannot *continue* (as in "[t]o keep on, maintain, retain")[1] jurisdiction that it never previously had.

> ### 3.    The Board's continuing jurisdiction to provide interpretive guidance does not extend to regulations that were not the subject of a contested proceeding before the Board and were neither drafted nor substantively considered by the Board

It would also be contrary to the policy underpinnings of the Copyright Royalty Board's limited grant of continuing jurisdiction to extend that jurisdiction to regulations crafted by a

---

[1] Continue, Oxford English Dictionary Online,
https://www.oed.com/view/Entry/40270?rskey=ydl0c4&result=3&isAdvanced=false#eid.

Copyright Arbitration Royalty Panel. The Register of Copyrights has recognized that the purpose of extending the Board's limited continuing jurisdiction to interpretive guidance is to enable the Board to clarify "existing regulations to ensure they are applied in the manner intended by the CRJs. As the district court appreciated, the CRJs are in the best position to provide this type of interpretive guidance, *given their familiarity with the extensive record on which the regulations are based. . .*" *Scope of the Copyright Royalty Judges' Continuing Jurisdiction*, 80 Fed. Reg. 25,333, 25,335 (May 4, 2015) (emphasis added). In other words, the Board's jurisdiction to provide interpretive guidance for its regulations exists only as the continuation of a proceeding actually litigated before the Board, and in which a record was developed. Here, the Board has no unique familiarity with regulations it did not draft or even substantively consider.

Indeed, in the limited instances in which the Board has exercised its continuing jurisdiction, it has always been over regulatory language that the Board itself adopted at the conclusion of a fully litigated proceeding. *See, e.g., Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. at 56,726 (the Board, under its grant of continuing jurisdiction, reopened a prior determination it has issued following a ratemaking proceeding during which an extensive record was developed on the contested regulatory issue); *Mechanical and Digital Phonorecord Delivery Rate Determination Proceeding*, 74 Fed. Reg. 6832, 6833 (Feb. 11, 2009) (reopening mechanical license rate proceeding to correct legal errors in regulations identified by Register of Copyrights).

This key justification for extending continuing jurisdiction to allow interpretive guidance is entirely absent in this case. The Board has no familiarity with the extensive record that was presented before the Copyright Arbitration Royalty Panel almost twenty years ago and which

resulted in the Gross Proceeds definition at issue in this case. No evidentiary record has ever been developed before the Board on this point, as each Business Establishment Services proceeding has settled. *See infra* 11-14. And, obviously, the Board did not draft the disputed regulatory language. After the first proceeding, each subsequent Business Establishment Service license proceeding resulted in a settlement in which the parties agreed to carry over the Copyright Arbitration Royalty Panel's original Gross Proceeds definition. *See supra*, pp. 7-9.

The Board thus has never adjudicated the regulations for the Business Establishment Services license. Nor did it have the authority to reject or revise them, because all parties to the ratemaking proceedings – including SoundExchange – have always settled. When the Board is presented with a settlement approved by all participants, it is prohibited by statute from any substantive evaluation or change of the terms of the settlement unless it finds they are completely at odds with the evidentiary record. 17 U.S.C. § 801(b)(7)(A)(ii); *Determination of Royalty Rates and Terms for Making Ephemeral Copies of Sound Recordings for Transmission to Business Establishments (Business Establishments III)*, 83 Fed. Reg. 60,362, 60,363 (Nov. 26, 2018) (to be codified at 37 C.F.R. pt. 384) ("The Judges may decline to adopt the agreement as a basis for statutory terms and rates for participants that are not parties to the agreement,' only 'if any participant [in the proceeding] objects to the agreement and the [Judges] conclude, based on the record before them if one exists, that the agreement does not provide a reasonable basis for setting statutory terms or rates.'") (alteration in original); *Mechanical & Digital Phonorecord Delivery Rate Determination Proceeding*, 74 Fed. Reg. 4510, 4514 (Jan. 26, 2009) (to be codified at 37 C.F.R. pt. 385) ("Only if an objection is received by one of more of the parties are we given any discretion over the settlement . . . ."). Such a finding has never occurred in the context of any of the Business Establishment Service license proceeding settlements – all of

which the Board accepted as submitted and without any evidentiary record ever having been created.

Consequently, this case is fundamentally different from *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150 (D.D.C. 2014) – the sole case in which an issue has ever been referred to the Board under the primary jurisdiction doctrine. In *Sirius XM*, the regulation at issue was one that the Board itself drafted after adjudicating a fully-litigated rate proceeding, which involved a complex record developed before the Board, including many thousands of pages of conflicting documents, several weeks of live testimony and cross examination, and extensive briefing. *See Sirius XM*, 65 F. Supp. 3d at 152 ("To fulfill its statutory mandate, the CRB presides over extensive administrative proceedings, which can involve scores of witnesses and voluminous documents, before issuing its determinations and promulgating regulations. *See generally* 17 U.S.C. § 803. Sirius XM and SoundExchange already have met in two such proceedings before the CRB.") (footnote omitted). In that context, the district court found that the interpretive dispute regarding the resulting regulations fell under the jurisdictional grant in 17 U.S.C. § 803(c)(4), authorizing the Board to correct errors in its prior determinations.

In determining that the Board's continuing jurisdiction encompassed the authority to issue clarifying amendments to a prior written determination issued by the Board, the Register of Copyrights specifically based her ruling on the grounds that "the CRJs are in the best position to provide this type of interpretive guidance, given their familiarity with the extensive record on which the regulations are based and their general 'technical and policy expertise.'" *Scope of the Copyright Royalty Judges' Continuing Jurisdiction*, 80 Fed. Reg. 25,333, 25,335 (May 4, 2015) (citation omitted). In this case, without having drafted the regulatory language at issue, and having never heard any evidence or conducted any substantive proceedings related to the

Business Establishment Service license, the Board lacks the kind of specific familiarity, experience, or expertise that justified continuing jurisdiction in *Sirius XM*.

The interpretive issues in this case are more aligned with those in another royalty underpayment action recently brought by SoundExchange, *SoundExchange v. Muzak*, 854 F.3d 713 (D.C. Cir. 2017), in which the D.C. Circuit first raised but then declined to invoke the primary jurisdiction doctrine. The dispute in *Muzak* involved conflicting interpretations of a statutory definition. As in this case, SoundExchange claimed that Muzak underpaid its statutory royalties due to an incorrect interpretation and filed a district court action for money damages. As in this case, the language at issue, which distinguished between different categories of licensees and therefore the rates that must be paid, were within the Board's general policy and technical expertise but had not been drafted by the Board. As in this case, neither party had moved the district court to stay the case on primary jurisdiction grounds. On appeal, the D.C. Circuit raised the issue, *sua sponte*, whether the interpretive issue should be referred to the Board. After briefing from all parties, however, the court declined to make any referral, accepting the parties' arguments that the Board did not have continuing jurisdiction as the dispute did not arise from a ratemaking proceeding. *See id.* at 718 (after inquiring "since Royalty Board decisions are appealed to our court, did the district court even have jurisdiction?" concluding that it did, because "our case is divorced from a rate proceeding.").

In that case, the Register of Copyrights and the Board agreed that the Board would not have jurisdiction to provide interpretive guidance related to a private royalty payment dispute, particularly where the dispute did not turn on language the Board itself drafted or where there was no prior Board proceeding to reopen and correct. *United States Amicus Br.*, 2017 WL 34707 at *11-12 ("It is not, and has never been, the role of either the Copyright Royalty Board or the

Register of Copyrights to adjudicate private disputes. . . Indeed, the Copyright Act does not contemplate any role for the Copyright Royalty Board in the adjudication of such private disputes. . . Because this case does not involve any amendment to an issued ratemaking determination, [the continuing jurisdiction] provision provides no basis for the Board to address the dispute at issue here. And because the Board has no statutory basis to adjudicate this private dispute, it cannot refer the [interpretive] question to the Register of Copyrights . . . The government therefore agrees that the interpretative question in this case was appropriately presented to a district court, rather than to the Board or the Register.") (footnote omitted). *See also id.* at *18 (For the same reasons noted above, "there is no basis for referral under the doctrine of primary jurisdiction.").

Here, as in *Muzak*, invocation of primary jurisdiction would be improper because the legal issue in dispute is not one that the Board has jurisdiction to resolve. The dispute presented in this case is a private payment dispute, arising under federal copyright law, and divorced from any ratemaking proceeding before the Board. The disputed regulatory language was not drafted or ever substantively considered by the Board, nor has the Board ever presided over any disputed proceeding related to the Business Establishment Service license. Consequently, the Board has no substantive experience with the license at issue, nor has it heard any testimony or other evidence related to the license, much less the particular definition in dispute.

Moreover, this Court is capable of and within its discretion to interpret and apply the relevant regulation. *See, e.g., SoundExchange, Inc. v. Muzak LLC*, No. 15-CV-0476-RCL, 2019 WL 3997468, at **2-3 (D.D.C. Aug. 23, 2019) (interpreting license terms codified by the Board at 37 C.F.R. §§ 370.3(g), 382.6 in context of royalty underpayment dispute); *Yesh Music LLC v. Amazon.com, Inc.*, 249 F. Supp. 3d 645, 659, 662-64, 667-68 (E.D.N.Y. 2017) (interpreting and

applying various Board regulations setting forth terms of statutory license); *EMI Entm't World, Inc. v. Karen Records, Inc.*, 603 F. Supp. 2d 759, 763, 766 (S.D.N.Y. 2009) (interpreting and applying federal regulations setting forth terms of statutory license). *See also Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 190 (D.D.C. 2001) ("Although resolving this dispute may require the court to read and understand the tariff, the defendants have not demonstrated that this will pose any insurmountable technical or intellectual hurdles."). Accordingly, there is no basis for the Court to refer this matter to the Board.

## II.  EVEN IF THE BOARD MIGHT HAVE LIMITED JURISDICTION TO OFFER INTERPRETIVE GUIDANCE, THE COURT SHOULD DECLINE TO INVOKE THE PRIMARY JURISDICTION DOCTRINE

If the Court determines that the Board may have limited jurisdiction to offer interpretive guidance of the term "Gross Proceeds," the Court nonetheless should exercise its discretion and decline to apply the primary jurisdiction doctrine. The doctrine of primary jurisdiction does not deprive this Court of jurisdiction but instead "structures [] proceedings as a matter of judicial discretion, so as to engender an 'orderly and sensible coordination of the work of agencies and courts.'" *United States v. Bessemer & Lake Erie R. Co.*, 717 F.2d 593, 599 (D.C. Cir. 1983); *United States v. Philip Morris USA Inc.*, 686 F.3d 832, 837 (2012) ("Although '[n]o fixed formula exists for applying the doctrine of primary jurisdiction,' some principles emerge from our precedents. 'The primary jurisdiction doctrine rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently) ... and on the advantages of allowing an agency to apply its expert judgment.'") (alteration in original) (citations omitted).

In deciding whether to invoke primary jurisdiction, courts consider, *inter alia*:  (1) whether the issue is within the conventional expertise of judges; (2) whether the issue lies within the agency's discretion or requires the exercise of agency expertise; (3) whether there is a

substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.  *See Krukas v. AARP, Inc*., 376 F. Supp. 3d 1, 16 (D.D.C. 2019).  Further, the D.C. Circuit has recognized that the primary jurisdiction doctrine "'should seldom be invoked unless a factual question requires both expert consideration and uniformity of resolution.'" *Lipton*, 135 F. Supp. 2d at 191 (citation omitted).

These considerations, when applied to the circumstances of this case, weigh strongly against invocation of primary jurisdiction and issuing a stay of this proceeding.

### A.    The Non-Exclusive Primary Jurisdiction Factors Weigh Against Referral to the Board

*First*, federal courts are the traditional venue to resolve royalty payment disputes – such as this one – that turn on interpretation of copyright statutes or regulations.  *See Determination of Royalty Rates and Terms for Ephemeral Recording and Webcasting Digital Performance of Sound Recordings (Web IV)*, 81 Fed. Reg. at 26,401 n.228 ("any attempt to seek a remedy based upon an auditor's findings, and any attempt to challenge those findings, must be made in a court of competent jurisdiction, or through any private alternative dispute resolution procedure to which the affected parties may have agreed."); *Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. at 56,727 ("the Judges 'lack enforcement jurisdiction and, therefore, can neither order compliance nor fix penalties.' . . . Lacking those enforcement and remedial powers necessarily leads to the conclusion that the Judges' jurisdiction does not extend to application and factual dispute resolution regarding application of the regulations."). *See also United States Amicus Br.*, 2017 WL 34707 at *1 ("At issue in this case is a private dispute over the alleged underpayment of royalties for the public performance of copyrighted sound . . . Such disagreements, like most questions of private liability under copyright law, are for resolution between the interested

parties themselves, or if necessary with the assistance of courts.").

Courts routinely interpret agency regulations to resolve similar disputes, including specifically with respect to the Board's regulations. Indeed, in the *Muzak* royalty underpayment claim brought by SoundExchange, the district court recently resolved conflicting interpretations of the Board's regulations relating to the terms of a statutory license and applied its interpretation to the case, without referring the issue to the Board. *Muzak LLC*, 2019 WL 3997468, at \*\*2-3 (interpreting 37 C.F.R. §§ 370.3(g), 382.6). *See also Yesh Music LLC*, 249 F. Supp. 3d at 659, 662-64, 667-68 (interpreting and applying various Board regulations setting forth terms of statutory license); *EMI Entm't World, Inc.*, 603 F. Supp. 2d at 763, 766 (interpreting and applying regulations setting forth terms of statutory license). Similarly, federal courts routinely resolve disputes regarding statutory language related to various statutory licenses under the Copyright Act as simple matters of statutory interpretation without resort to the primary jurisdiction doctrine. *See, e.g., Muzak LLC*, 854 F.3d at 716-19 (interpreting disputed statutory provisions related to statutory license in context of royalty underpayment dispute); *Fox Television Stations, Inc. v. FilmOn X, LLC*, 150 F. Supp. 3d 1, 6-7 (D.D.C. 2015) (interpreting the definition of "cable facility" in 17 U.S.C. § 111(f)); *Arista Records, LLC v. Launch Media, Inc.*, 578 F.3d 148, 151-52, 157-64 (2d Cir. 2009) (interpreting statutory provisions relating to statutory license presided over by Board); *WPIX, Inc. v. ivi, Inc*., 691 F.3d 275, 278-85 (2d Cir. 2012) (interpreting 17 U.S.C. § 111); *CBS Broad., Inc. v. EchoStar Commc'ns Corp*., 265 F.3d 1193, 1198-1204 (11th Cir. 2001) (interpreting 17 U.S.C. § 119(e)) *ABC, Inc. v. PrimeTime 24*, 184 F.3d 348, 351-55 (4th Cir. 1999) (interpreting 17 U.S.C. § 119(a)).

*Second*, and as established *supra* 11-14, the Board has no unique knowledge or expertise with respect to the statutory license or disputed regulatory language at issue. Unlike the dispute

in *Sirius XM*, the Board:  did not draft the disputed regulatory language; has never presided over a single contested ratemaking proceeding for the Business Establishment License; and consequently has never heard any testimony or other evidence related to the license, market segment, or regulatory definition at issue. The Board's ability to provide meaningful input on interpretive issues raised in royalty underpayment cases is further limited on a practical level by its resources. It does not have the resources to adjudicate matters beyond those statutorily prescribed. The Government itself has noted that the Board could not feasibly take on the burden of rendering advisory opinions in private disputes such as this case even if it were so authorized. *See United States Amicus Br.*, 2017 WL 34707 at *16 (noting that "Congress could not have intended the Copyright Royalty Board to adjudicate private disputes, like the present one. . . If the Board entertained petitions for advisory rulings . . . it might have time for little else.  Yet the regularly scheduled ratemaking and distribution proceedings that the Copyright Royalty Board conducts consume nearly all of its limited institutional resources."). Every royalty underpayment claim that proceeds to litigation is likely to have at least one dispute regarding statutory or regulatory interpretation. If the mere presence of such a dispute were enough to warrant invocation of primary jurisdiction, the Board could be overwhelmed with referrals that it was never intended – nor budgeted – to handle.

*Third*, the Court's adjudication of this case by interpreting and then applying the definition of Gross Proceeds to the specific facts in dispute here would not create any readily apparent risk of inconsistent rulings. *See Lipton*, 135 F. Supp. 2d at 191 (noting that "[i]nsofar as the tariff is law, it is the law, applied to the facts of this case, that will dictate the outcome. There are no factual inquiries requiring the particular expertise of the administrative agency, and therefore no substantial danger of inconsistent rulings."). Moreover, the Board itself has

acknowledged that when it provides interpretive guidance in the context of a referral, it cannot
and will not consider the specific facts related to the private dispute, apply its guidance to the
individual royalty payment dispute, or even make recommendations to the district court related
to the referred case, significantly limiting the Board's ability to provide uniformity among
individual cases. *Determination of Rates and Terms for Preexisting Subscription Services and
Satellite Digital Audio Radio Services*, 82 Fed. Reg. at 56,726-27. Finally, the Business
Establishment Service license rates and terms are subject to adjustment proceedings every five
years. *See* 17 U.S.C. § 112(e)(3). In the unlikely event any ruling in this case creates any
unforeseeable inconsistencies or other problems, SoundExchange may seek to amend those
regulations in the next proceeding before the Board in the ordinary course.

 *Fourth*, no prior application has been made to the Board, as would weigh in favor of
invoking primary jurisdiction. *Cf. Total Telecomms. Servs., Inc. v. Am. Tel. & Tel. Co.*, 919 F.
Supp. 472, 478-79 (D.D.C. 1996) ("Importantly, the plaintiffs do not deny the fact, brought
forward by AT & T, that many of the issues presently pending before the court are already before
the FCC."). Not only did SoundExchange choose to bring this case directly in this Court without
making any application to the Board, in prior cases it has expressly acknowledged that the Board
does not have jurisdiction over private royalty payment disputes. *See SoundExchange Suppl Br.*,
2017 WL 34708 at *1-3; 10-14. Nor, after electing to file its case in this Court, did
SoundExchange move the Court for a stay or referral to the Board.

## B. Efficiency and Fairness Would be Better Served by a Streamlined Resolution in This Case

 The doctrine of primary jurisdiction should be "invoked sparingly. . . The parties' interest
in a swift resolution of their dispute must be balanced against those factors that might favor
deferral." *APCC Servs., Inc. v. WorldCom, Inc.*, 305 F. Supp. 2d 1, 13 (D.D.C. 2001) (internal

citation omitted). Here, efficiency and fairness would be better served by a streamlined resolution.

In determining whether to defer to an agency under primary jurisdiction grounds, courts consider whether such referral would unduly delay the proceedings. To that end, "[w]henever possible courts should avoid . . . drawn-out proceedings. The efficient administration of justice demands it." *Rohr Indus., Inc. v. Washington Metro. Area Transit Auth*., 720 F.2d 1319, 1327 (D.C. Cir. 1983) (citations omitted). *See also, id*. (noting that "As Judge Devitt remarked . . . 'Justice delayed is justice denied.' . . . Rote deference to agency proceedings in such circumstances can force parties to unnecessarily travel roads 'equally long and expensive and available only to those with long purses ...'") (internal citations omitted).

Referring any portion of this case to the Board would unduly delay the proceedings – especially as the Board could not issue a ruling on the ultimate merits of the case, or even consider the specific facts or claims present in this case. *See Rohr Indus., Inc.,* 720 F.2d at 1326 ("When reaching a decision to defer, a court must consider how long an administrative process will run before its work is done. When the time necessary to completion is short, the case for deference is great. But when that process threatens to drag on—as this one does—for many years, then the rationale supporting deference is much weaker."). *See also id*. at 1323-24 (quoting *United States v. Elrod*, 627 F.2d 813, 818 (7th Cir.1980) for proposition that "[w]here no administrative remedy exists, the doctrine of primary jurisdiction does not apply.") (alteration in original).

If the Court were to refer the matter to the Board for its guidance on interpretation of the term Gross Proceeds (guidance which Music Choice submits would be of extremely limited value given the Board's lack of unique knowledge of the specific regulatory language in

dispute), the Court would need to stay the district court litigation, only to resume the case after resolution of the Board proceedings. *See Sirius XM*, 65 F. Supp. 3d 150 at 157. Prior experience shows that invoking primary jurisdiction in this case is likely to result in a very long delay. In *Sirius XM*, the court's referral to the Board resulted in a more than three-year delay after which, having received the regulatory guidance of the Board, the court still had to adjudicate the payment dispute between the parties. *See Sirius XM*, 65 F. Supp. 3d at 157 (staying federal court litigation pending a determination by the Board) and *Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. 56,725- 56,735 (issuing the Board's final interpretive guidance without considering any facts specific to the dispute, without applying its guidance or making recommendations, and returning the dispute to the district court for further proceedings). Moreover, if either party were to appeal the Board's amended determination, such appeal must be filed directly in the D.C. Circuit shortly after the determination is published in the Federal Register, adding at least another year – and more likely two – before the Board proceeding would be final and this Court's proceedings could resume. *See* 17 U.S.C. § 803(d)(1).

The prejudice to Music Choice from such a long delay is not justified by the limited guidance the Board might provide, even if it had jurisdiction to do so in this case. In *Sirius XM*, the Board ultimately held that its jurisdiction on referral was strictly limited to general interpretive guidance and did not extend to any application of that guidance to the district court case, or any other considerations of the substantive factual issues or disputes presented by the case as a whole. *Determination of Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio Services*, 82 Fed. Reg. at 56,726 ("Application of the Judges' interpretations is better done by the District Court, after a review of the complete factual record. .

."); *id.* at 56727 ("Lacking those enforcement and remedial powers necessarily leads to the conclusion that the Judges' jurisdiction does not extend to the application and factual dispute resolution regarding application of the regulations."). Moreover, any general guidance provided would not be based on any prior experience or evidentiary record from any prior proceeding related to the Business Establishment Service license or the disputed regulatory language.

Consequently, a referral to the Board would inject several years of delay and considerable added expense into this case and would yield very limited – in scope and utility – general guidance, after which the case would return to the court for full discovery and further proceedings to apply that guidance to the unique facts of this case. Keeping the entire case in the district court is more likely to result in a speedy and fair resolution and as such, weighs against referring any part of this case to the CRB in the first instance. *See APCC Servs., Inc.*, 305 F. Supp. 2d at 20 ("[T]he doctrine of primary jurisdiction is more apt where agencies can resolve pending issues in a timely manner; a long delay cautions against referral. . . '[r]eferral to the FCC would lead to lengthy delays, primarily as a result of the Agency's requirement to issue notice and obtain public comments before ruling [and] AT & T's interest in speed outweighs any benefit that might be obtained by soliciting the FCC's opinion on the particular matters at hand'. . . The Court therefore finds that the interest of judicial efficiency dictates that these actions proceed.") (quoting *AT & T Commc'ns v. City of Dallas*, 8 F. Supp. 2d 582, 590 (N.D.Tex.1998)).

## <u>CONCLUSION</u>

For the reasons stated herein, the Court should exercise its jurisdiction and fully resolve

the dispute presented in this case without staying the case for referral to the Copyright Royalty

Board.

Dated: July 7, 2020                                        Respectfully Submitted,

*/s/ Paul Fakler*
Paul Fakler (District of D.C. Bar No. NY297)
Margaret Wheeler-Frothingham (*Pro Hac Vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
(212) 506-5000
pfakler@orrick.com
mwheeler-frothingham@orrick.com

Diana Szego Fassbender (D.C. Bar No. 996625)
1152 15th Street, N.W.
Washington, D.C. 20005-1706
(202) 339-8533
dszego@orrick.com

*Attorneys for Defendant Music Choice*