**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| SoundExchange, Inc., )<br><br>Plaintiff, )<br><br>v. )<br><br>Music Choice, )<br><br>Defendant. ) | Civil Action No. 1:19-cv-999-RBW |

**<u>SOUNDEXCHANGE'S SUPPLEMENTAL BRIEF
IN FAVOR OF REFERRAL TO THE COPYRIGHT ROYALTY BOARD</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.      Background .............................................................................................................. 2

II.     This Court Should Refer Interpretation of the Board's Regulations to the Board
        Under the Doctrine of Primary Jurisdiction ........................................................... 6

        A.      Staying a Case and Referring an Issue under the Primary Jurisdiction
                Doctrine Is Appropriate When a Claim Requires Resolving Issues Within
                an Agency's Area of Expertise ..................................................................... 6

        B.      The Court Should Refer this Dispute to the Board ...................................... 7

III.    The Board Has Jurisdiction to Interpret and Clarify Its Regulations ................... 11

IV.     Conclusion ............................................................................................................ 14

# TABLE OF AUTHORITIES[*]

**CASES**

*Allnet Communication Service, Inc. v. National Exchange Carrier Ass'n*, 965 F.2d 1118 (D.C. Cir. 1992) ...........................................................................................6, 9

*American Assiation of Cruise Passengers v. Cunard Line, Ltd.*, 31 F.3d 1184 (D.C. Cir. 1994) ...........................................................................................................7

*APCC Services, Inc. v. WorldCom, Inc.*, 305 F. Supp. 2d 1 (D.D.C. 2001) ...............7, 9

*Auer v. Robbins*, 519 U.S. 452 (1997) ..............................................................10

*Far East Conference v. United States*, 342 U.S. 570 (1952) .........................................6

*Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 796 F.3d 111 (D.C. Cir. 2015) ...............................................................................3, 10

*Reiter v. Cooper*, 507 U.S. 258 (1993) ..............................................................7

*Settling Devotional Claimants v. Copyright Royalty Board*, 797 F.3d 1106 (D.C. Cir. 2015) .....................................................................................10

*SoundExchange, Inc. v. Copyright Royalty Board*, 904 F.3d 41 (D.C. Cir. 2018) ........................9

*SoundExchange, Inc. v. Muzak LLC*, 854 F.3d 713 (D.C. Cir. 2017)...................................13, 14

*\*SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150 (D.D.C. 2014) ...........................................................2, 4, 6, 7, 8, 9, 11

*United States v. Philip Morris USA Inc.*, 686 F.3d 832 (D.C. Cir. 2012) ............7, 9, 10

*\*United States v. Western Pacific Railroad Co.*, 352 U.S. 59 (1956) ................1, 6, 7, 10

**STATUTES**

17 U.S.C. § 112(e) .............................................................................3

17 U.S.C. § 112(e)(3)........................................................................1

17 U.S.C. § 112(e)(4)......................................................................1, 3

17 U.S.C. § 112(e)(6)(A) .....................................................................2

17 U.S.C. § 114(j)(11) .....................................................................13

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

17 U.S.C. § 801(b)(1) ...............................................................................................1

17 U.S.C. § 801(b)(7)(A) .........................................................................................12

17 U.S.C. § 802 .........................................................................................................2

17 U.S.C. § 802(a)(1) ................................................................................................3

17 U.S.C. § 803(a)(1) ................................................................................................3

17 U.S.C. § 803(c)(4) ...............................................................................................12

Copyright Royalty and Distribution Reform Act of 2004, Pub. L. No. 108-419, 118
    Stat. 2341 ...........................................................................................................4

## OTHER AUTHORITIES

37 C.F.R. § 384.3(a) .................................................................................................1

37 C.F.R. § 384.3(a)(1) .............................................................................................3

37 C.F.R. § 384.3(a)(2) ..........................................................................................4, 5

37 C.F.R. § 384.4 ......................................................................................................3

*Copyright Royalty Board Regulations Regarding Procedures for Determination
    and Allocation of Assessment To Fund Mechanical Licensing Collective and
    Other Amendments Required by the Hatch-Goodlatte Music Modernization Act,*
    84 Fed. Reg. 32,296 (July 8, 2019) ....................................................................1

*Determination of Reasonable Rates and Terms for the Digital Performance of
    Sound Recordings and Ephemeral Recordings,* 67 Fed. Reg. 45,240 (July 8,
    2002) ...................................................................................................................5

*Determination of Rates and Terms for Business Establishment Services,* 73 Fed.
    Reg. 16,199 (Mar. 27, 2008) .............................................................................5

*Determination of Rates and Terms for Business Establishment Services,* 78 Fed.
    Reg. 66,276 (Nov. 5, 2013) ...............................................................................5

*\*Determination of Rates and Terms for Preexisting Subscription Services and
    Satellite Digital Audio Radio Services,* 82 Fed. Reg. 56,725 (Nov. 30, 2017)....................2, 12

*Determination of Royalty Rates and Terms for Making Ephemeral Copies of Sound
    Recordings for Transmission to Business Establishments (Business
    Establishments III),* 83 Fed. Reg. 60,362 (Nov. 26, 2018) .............................1, 5, 12

*Digital Performance Right in Sound Recordings and Ephemeral Recordings,* 69
    Fed. Reg. 5693 (Feb. 6, 2004) ..........................................................................5

Order, *SoundExchange, Inc. v. Muzak LLC*, Case No. 16-7041 (D.C. Cir. Nov. 16, 2016), Doc. No. 1646415........................................................................................14

Report of the Copyright Arbitration Royalty Panel in Docket No. 2000-9 (Feb. 20, 2002) ...................................................................................................................4

\*Scope of the Copyright Royalty Judges' Continuing Jurisdiction, 80 Fed. Reg. 25,333 (May 4, 2015)................................................................................2, 11, 12, 13

*Who Pays SoundExchange: Q4 2019*, SoundExchange, https://www.soundexch ange.com/wp-content/uploads/2016/09/Who-Pays-SX-Q4-2019.pdf        (last visited July 6, 2020)...........................................................................................9

Plaintiff SoundExchange, Inc. ("SoundExchange") submits this supplemental brief in accordance with the Court's June 8, 2020 Order addressing "(1) whether the Copyright Royalty Board [(the "Board")] has jurisdiction over this matter, and (2) whether the Court should refer the question of regulatory interpretation raised by this case to the Copyright Royalty Board under the doctrine of primary jurisdiction."  Dkt. 22.

SoundExchange believes that this Court should refer the question of regulatory interpretation raised by this case to the Board under the doctrine of primary jurisdiction.  *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956) (primary jurisdiction "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). The Board is the expert agency charged with determining royalty rates and terms under statutory licenses, *e.g.*, 17 U.S.C. §§ 112(e)(3)-(4), 801(b)(1), and it is the agency that promulgated the regulations that must be interpreted in this case.  37 C.F.R. § 384.3(a); *Determination of Royalty Rates and Terms for Making Ephemeral Copies of Sound Recordings for Transmission to Business Establishments (Business Establishments III)*, 83 Fed. Reg. 60,362, 60,363 (Nov. 26, 2018); *Copyright Royalty Board Regulations Regarding Procedures for Determination and Allocation of Assessment To Fund Mechanical Licensing Collective and Other Amendments Required by the Hatch-Goodlatte Music Modernization Act*, 84 Fed. Reg. 32,296, 32,313 (July 8, 2019).  The Board has the expertise and jurisdiction necessary to resolve the parties' dispute over interpretation of the Board's royalty rate regulation at 37 C.F.R. § 384.3(a), and it is the tribunal best situated to do so.

In a case that SoundExchange brought against Sirius XM Radio for underpayment of statutory royalties, Judge Leon granted Sirius XM's request for such a referral over

1

SoundExchange's objection.  *SoundExchange, Inc. v. Sirius XM Radio Inc.*, 65 F. Supp. 3d 150

(D.D.C. 2014).  The Register of Copyrights then opined that the Board has jurisdiction to clarify

its regulations, *Scope of the Copyright Royalty Judges' Continuing Jurisdiction*, 80 Fed. Reg.

25,333 (May 4, 2015), and the Board ultimately issued a decision doing so.  *Determination of*

*Rates and Terms for Preexisting Subscription Services and Satellite Digital Audio Radio*

*Services*, 82 Fed. Reg. 56,725 (Nov. 30, 2017).  While SoundExchange argued against referral

and Board jurisdiction then, its arguments did not prevail.  In view of the decisions then, it is

clear that it is appropriate to refer questions of regulatory interpretation to the Board, and that the

Board has jurisdiction to clarify its regulations.  This Court should exercise its discretion to refer

this question to the Board.

## I.     Background

The Copyright Act permits certain music service providers like Music Choice to avail

themselves of statutory licenses.  Pursuant to these statutory licenses, eligible music services

may use copyrighted sound recordings without having to negotiate license agreements with

individual rights owners (typically performing artists and record companies).  Instead, a license

is provided by operation of law, and a service provider may choose to rely on it by paying

royalties and complying with other applicable requirements.  *E.g.*, 17 U.S.C. § 112(e)(6)(A).

The amount of royalties that a statutory licensee must pay, along with terms of royalty

payment, are generally determined in periodic proceedings before the Board, which consists of

three Copyright Royalty Judges appointed pursuant to 17 U.S.C. § 802.  Congress created the

Board specifically to have expertise relevant to the determination of regulations setting forth

statutory royalty rates and terms: all three Copyright Royalty Judges are experienced attorneys;

one must have "significant knowledge of copyright law"; and one must have "significant knowledge of economics." 17 U.S.C. § 802(a)(1).

As relevant here, the Board is to "establish rates that most clearly represent the fees that would have been negotiated in the marketplace between a willing buyer and a willing seller." 17 U.S.C. § 112(e)(4). Determining such rates is of a "highly technical nature." *Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 796 F. 3d 111, 127 (D.C. Cir. 2015) (explaining that "[r]eview of administratively determined rates is particularly deferential" (quotation marks omitted)). The Board's rate-setting proceedings are a type of rulemaking; the results are set forth in regulations promulgated by the Board pursuant to the Copyright Act and the Administrative Procedure Act. 17 U.S.C. § 803(a)(1). Under those Board regulations, statutory royalties must be paid to SoundExchange, which is a nonprofit organization authorized to collect statutory royalties and distribute them to performing artists and copyright owners. *E.g.*, 37 C.F.R. § 384.4.

Music Choice provides several different types of digital music services, including a residential consumer service that delivers music channels through cable and satellite television, and an audio service provided to business establishments. The latter – Music Choice's "business establishment service" – is the focus of this action. In providing its business establishment service, Music Choice relies on the statutory license in Section 112(e) of the Copyright Act, 17 U.S.C. § 112(e).

The statutory royalty rate for business establishment services is currently 12.75% of the "Licensee's 'Gross Proceeds' derived from the use in such service of musical programs that are attributable to [copyrighted] recordings." 37 C.F.R. § 384.3(a)(1). The term Gross Proceeds, as used in the broad language above, is defined as:

> all fees and payments, including those made in kind, received from
> any source before, during or after the License Period that are

> derived from the use of sound recordings during the License Period
> pursuant to 17 U.S.C. 112(e) for the sole purpose of facilitating a
> transmission to the public of a performance of a sound recording
> under the limitation on exclusive rights specified in 17 U.S.C.
> 114(d)(1)(C)(iv).

37 C.F.R. § 384.3(a)(2).  The parties dispute how these provisions of Section 384.3(a) should be

interpreted and applied to Music Choice's business establishment service.  *See* Dkt. 20 at 2-5.  In

broad terms, SoundExchange believes that the Board's regulations require Music Choice to pay

it the applicable percentage of the proceeds Music Choice generates from its business

establishment service, while Music Choice has claimed the right to exclude from its royalty

calculations the vast majority of the fees and payments it actually receives from the provision of

its business establishment service through channel-by-channel allocations not contemplated by

the regulations.[1]  *See* Complaint, Dkt. 1 ¶ 26.

These regulations have a long history.  The predecessor of Section 384.3(a)(1) was

originally devised by a Copyright Arbitration Royalty Panel ("CARP") in the royalty rate-setting

proceeding now generally referred to as *Webcasting I* ("*Web I*").[2]  There, after reviewing

evidence of industry licensing practices, the CARP determined that the provider of a business

establishment service should pay royalties at a statutory rate that was a percentage of "the

Licensee's annual gross proceeds derived from the use in such broadcast service of the musical

programs which are attributable to copyrighted recordings."  Report of the Copyright Arbitration

Royalty Panel in Docket No. 2000-9 at B-7 (Feb. 20, 2002) ["*Web I* CARP Report"]; *see also id.*

at 125-27.  On review of the CARP's decision by the Register of Copyrights ("Register"),

---

[1] This dispute is much like the one in SoundExchange's case against Sirius XM, which involved the question
whether other Board regulations permitted Sirius XM to make certain revenue allocations when calculating its
royalty payments.  *Sirius XM*, 65 F. Supp. 3d at 153.

[2] CARPs were ad hoc tribunals that functioned as the predecessor to the Board.  CARPs were replaced by the Board
as part of the Copyright Royalty and Distribution Reform Act of 2004.  Pub. L. No. 108-419, 118 Stat. 2341.

representatives of copyright owners argued that it was important to clarify that gross proceeds include items such as in-kind consideration and payments received from any source.  In response, the Register concluded that the regulations should include a specific definition of gross proceeds "to avoid any confusion on this point."  *Determination of Reasonable Rates and Terms for the Digital Performance of Sound Recordings and Ephemeral Recordings*, 67 Fed. Reg. 45,240, 45,268 (July 8, 2002).  The definition she recommended is similar to the one in Section 384.3(a)(2) today.  *Compare id., with* 37 C.F.R. § 384.3(a)(2).

Subsequently, regulations implementing a 2003 industry settlement relocated the relevant regulations and made some changes in wording.[3]  After the Copyright Royalty Distribution and Reform Act transferred jurisdiction over business establishment service rates to the Board, implementation of a 2007 industry settlement restated the business establishment service rates and terms in a new CFR part with some additional editorial changes.[4]  The Board extended the regulations with further wording changes in implementing industry settlements in 2012 and 2018.[5]

Thus, the Board has addressed the treatment of business establishment service royalties in its regulations three times, but always in the context of implementing industry settlements broadly carrying forward the Register's modification of the original CARP decision.  Now that the present dispute has revealed a previously-unrecognized disagreement about the meaning of

---

[3] *Digital Performance Right in Sound Recordings and Ephemeral Recordings*, 69 Fed. Reg. 5693, 5698 (Feb. 6, 2004).

[4] *Determination of Rates and Terms for Business Establishment Services*, 73 Fed. Reg. 16,199, 16,199-200 (Mar. 27, 2008).

[5] *Determination of Rates and Terms for Business Establishment Services*, 78 Fed. Reg. 66,276, 66,277 (Nov. 5, 2013); 83 Fed. Reg. at 60,363.

those regulations, the Board should have the opportunity to apply its expertise and judgment to consideration of the treatment of business establishment services in its regulations.

## II.      This Court Should Refer Interpretation of the Board's Regulations to the Board Under the Doctrine of Primary Jurisdiction

### A.    Staying a Case and Referring an Issue under the Primary Jurisdiction Doctrine Is Appropriate When a Claim Requires Resolving Issues Within an Agency's Area of Expertise

Under the primary jurisdiction doctrine, courts may "refer to an administrative agency certain issues within that agency's area of expertise." *Sirius XM*, 65 F. Supp. 3d at 153; *see also W. Pac. R.R. Co.*, 352 U.S. at 63-64 ("issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). Such a referral permits "an agency to apply its expert judgment," as well as promoting uniform outcomes across the country. *Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Ass'n*, 965 F.2d 1118, 1120 (D.C. Cir. 1992); *see also W. Pac. R.R. Co.*, 352 U.S. at 64. Such expert judgment involves both technical expertise and "policy judgments needed to implement an agency's mandate." *Allnet Commc'n Serv., Inc.*, 965 F.2d at 1120.

Referring an issue to an agency under the primary jurisdiction doctrine is appropriate when the agency "is best suited to make the initial decision on the issues in dispute, even though the district court had subject matter jurisdiction." *Allnet Commc'n Serv., Inc.*, 965 F.2d at 1120; *see also Far E. Conference v. United States*, 342 U.S. 570, 574-75 (1952) ("Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more

flexible procedure."); *Am. Ass'n of Cruise Passengers v. Cunard Line, Ltd.*, 31 F.3d 1184, 1186 (D.C. Cir. 1994).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *W. Pac. R.R. Co.*, 352 U.S. at 64. Courts must determine on a case-by-case basis "whether the reasons for the existence of the doctrine are present and whether the purpose it serves will be aided by its application." *Id.* Courts in this district have considered four factors in determining whether to apply the primary jurisdiction doctrine: "(1) whether the issue is within the conventional expertise of judges; (2) whether the issue lies within the agency's discretion or requires the exercise of agency expertise; (3) whether there is a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *APCC Servs., Inc. v. WorldCom, Inc.*, 305 F. Supp. 2d 1, 13 (D.D.C. 2001); *see also United States v. Philip Morris USA Inc.*, 686 F.3d 832, 837 (D.C. Cir. 2012).

"In general, when primary jurisdiction lies with an administrative agency, the district court should stay the proceedings in front of it, not dismiss the suit." *Am. Ass'n of Cruise Passengers*, 31 F.3d at 1187; *see also Reiter v. Cooper*, 507 U.S. 258, 268-69 & n. 3 (1993); *Sirius XM*, 65 F. Supp. 3d at 153-54. "Courts generally do not actually send cases or issues to an agency for resolution pursuant to this doctrine, but rather refrain from exercising their jurisdiction to allow the parties to raise the dispute to the agency." 65 F. Supp. 3d at 153 n.2 (citing *Reiter*, 507 U.S. at 268 n.3).

**B. The Court Should Refer this Dispute to the Board**

Just as Judge Leon referred to the Board SoundExchange's dispute with Sirius XM as to whether the Board regulations applicable to Sirius XM permitted certain royalty allocations Sirius XM was making, 65 F. Supp. 3d at 153-57, this Court should refer to the Board

SoundExchange's dispute with Music Choice as to whether the Board regulations applicable to Music Choice's business establishment service permit the royalty allocations Music Choice is making.

The *Sirius XM* case was an underpayment action brought by SoundExchange against Sirius XM stemming from a dispute between the parties over the term "gross revenues" in the Board regulations applicable to Sirius XM.  *Id.* at 153.  Finding the regulation in question ambiguous, Judge Leon determined that "the technical and policy expertise of the CRB makes referral to that body appropriate."  *Id.* at 155-57.  Judge Leon observed that the royalty rate in question had arisen from Board proceedings, and that whether the Board "set the rates intending the types of revenue at issue to be included in or excluded from the gross revenue calculation is a question best posed to the CRB itself."  *Id.* at 156.  Judge Leon also noted that "the CRB was established in part for the purpose of determining 'reasonable rates and terms of royalty payments'" and "is composed of judges with technical expertise in copyright law and economics."  *Id*. at 155.  He also found important agency expertise that "is not merely technical but extends to the policy judgments needed to implement an agency's mandate."  *Id*. at 156 (quoting *Allnet*, 965 F.2d at 1120).

The same considerations apply here.  This case involves a dispute over technical Board regulations specifying the royalties that Music Choice is to pay, including the definition of the term "Gross Proceeds."  The Board did not significantly author these regulations, but it now has jurisdiction over them, and issued them.  There is a good chance the Board would have to address the issue raised by this case in any event in the next business establishment service rate proceeding.  While SoundExchange believes that the regulations clearly favor its position (as it did in the *Sirius XM* case), Music Choice believes that they permit an allocation that excludes

from Gross Proceeds the vast majority of the fees and payments it receives from providing its business establishment service based on the number of channels it provides, even though the regulations do not specify such an allocation.

Resolving this dispute will require an understanding of digital music services, the technologies they employ, business models and accounting, as well as an exercise of the discretion provided to the Board under the governing statutory royalty rate standard.  *See SoundExchange, Inc. v. Copyright Royalty Bd.*, 904 F.3d 41, 51-57 (D.C. Cir. 2018).  These are not matters "within the conventional expertise of judges."  *APCC Servs.*, 305 F. Supp. 2d at 13.  However, they are solidly "within the agency's discretion or require[] the exercise of agency expertise."  *Id.*  The Board is the agency responsible for setting statutory royalty rates that satisfy particular statutory standards, and the agency that promulgated these regulations.  Thus, the present dispute falls squarely within the technical and policy expertise of the Board.  *See Allnet Commc'n Serv., Inc.*, 965 F.2d at 1120; *see also Philip Morris USA Inc.*, 686 F.3d at 837; *Sirius XM*, 65 F. Supp. 3d at 155-56.  In fact, the issues here involve "the [agency's] interpretation of its own regulations, on which it is owed great deference."  *Allnet Commc'n Serv., Inc.,* 965 F.2d at 1122.

Further, and unlike the *Sirius XM* case, 65 F. Supp. 3d at 155, referral to the Board would also mitigate any "danger of inconsistent rulings."  *APCC Servs., Inc.*, 305 F. Supp. 2d at 13.  Music Choice is not the only business establishment service provider that relies on the statutory license.[6]  A resolution by this Court would bind only the parties to this proceeding.  If there are other business establishment service providers that, unbeknownst to SoundExchange, have

---

[6] *See Who Pays SoundExchange: Q4 2019*, SoundExchange, https://www.soundexchange.com/wp-content/uploads/ 2016/09/Who-Pays-SX-Q4-2019.pdf (last visited July 6, 2020) (identifying 38 other entities that pay business establishment service royalties to SoundExchange).

adopted Music Choice's interpretation of the regulations, and SoundExchange discovers such issues, district courts presiding over other cases involving them could potentially come to different conclusions about the interpretation of the Board regulations in 37 C.F.R. § 384.3(a). By contrast, if the Board provides guidance on the proper interpretation of its regulations, that would offer certainty to SoundExchange and all other business establishment service licensees in any future disputes, obviating any risk of inconsistent rulings.  *See Philip Morris USA Inc.*, 686 F.3d at 837 (noting one of the motivations for the primary jurisdiction doctrine as a "concern for uniform outcomes").

Finally, this Court's deferring the Board to consider the meaning of its regulations would be consistent with other principles of administrative law.  Courts generally defer to agencies' reasonable interpretations of their own regulations.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Settling Devotional Claimants v. Copyright Royalty Board*, 797 F.3d 1106, 1118 (D.C. Cir. 2015) (deference to the Board's "interpretation of its own regulation").  In the case of the Board's highly technical royalty rate regulations, the D.C. Circuit has stated repeatedly that its approach is "particularly deferential."  *Intercollegiate Broad. Sys.*, 796 F.3d at 127 (quoted in *SoundExchange, Inc. v. Copyright Royalty Bd*., 904 F.3d 41, 50 (D.C. Cir. 2018)).  This deference reinforces that the Board should be given the first opportunity to interpret its business establishment service regulations.

Under the standards for applying of the doctrine of primary jurisdiction, "the reasons for the existence of the doctrine are present and . . . the purpose it serves will be aided by its application" in this case.  *See W. Pac. R.R. Co.,* 352 U.S. at 64.  This case should be referred to the Board just as Judge Leon referred SoundExchange's dispute with Sirius XM to the Board.

III.     **The Board Has Jurisdiction to Interpret and Clarify Its Regulations**

In the *Sirius XM* case, SoundExchange argued that the Board did not have the power to accept a referral from the court under the doctrine of primary jurisdiction.  However, SoundExchange's arguments were rejected by the court, the Register, and the Board.  At this point, there can be no dispute that the Board has jurisdiction to interpret and clarify its regulations in 37 C.F.R. § 384.3(a).

As Judge Leon explained:

> Under the Copyright Act, the CRB has "continuing jurisdiction" to "issue an amendment to a written determination to correct any technical or clerical errors in the determination or to modify the terms, but not the rates, of royalty payments in response to unforeseen circumstances that would frustrate the proper implementation of such determination."  17 U.S.C. § 803(c)(4). Neither party is asking for a change to rates; only a clarification of the terms.  This is within the CRB's continuing jurisdiction.

*Sirius XM*, 65 F. Supp. 3d at 156.

After Judge Leon issued his decision referring the *Sirius XM* case to the Board, the Board sought the opinion of the Register as to whether it could accept the referral from Judge Leon. *See Scope of the Copyright Royalty Judges' Continuing Jurisdiction*, 80 Fed. Reg. 25,333 (May 4, 2015).  The Register agreed with Judge Leon that clarifying existing regulations falls within the Board's jurisdiction to correct technical errors in prior determinations.  The Register explained:

> the CRJs' power to "correct any technical . . . errors" in determinations encompasses the power to resolve ambiguity in the meaning of regulations adopted pursuant to those determinations. Such a correction is "technical" in the sense that it merely clarifies existing regulations to ensure they are applied in the manner intended by the CRJs.  As the district court appreciated, the CRJs are in the best position to provide this type of interpretive guidance, given their familiarity with the extensive record on which the regulations are based and their general "technical and policy expertise."  *SoundExchange*, 2014 WL 4219591 at *4.  This

11

> approach is also consistent with general principles of
> administrative law, under which courts regularly defer to agencies'
> reasonable interpretations of ambiguous regulations.  *See Auer v.
> Robbins*, 519 U.S. 452, 461 (1997).  Section 803(c)(4) provides the
> administrative mechanism by which the CRJs can issue such
> interpretations.

80 Fed. Reg. at 25,335 (footnote omitted).  The Board "accept[ed] the scope of their 'continuing

jurisdiction' under 17 U.S.C. 803(c)(4) as described by the Register."  82 Fed. Reg. at 56,727.

The same principles apply here.  While the lineage of the regulations at issue here can be

traced back to the *Web I* CARP, and an industry settlement provided the impetus for the Board's

most recent issuance of the regulations, the regulations are nonetheless a determination of

statutory royalty rates and terms by the Board issued at the conclusion of a rate-setting

proceeding.  *See* 83 Fed. Reg. at 60,362-63; 17 U.S.C. § 801(b)(7)(A) (describing adoption of

industry agreements by the Board "as a basis for statutory terms and rates").[7]  There is nothing in

Section 803(c)(4) suggesting that the Board's jurisdiction depends on its having made up a

regulation out of whole cloth.

In fact, the Register's opinion in *Sirius XM* highlighted a situation in which the Board had

previously relied on its continuing jurisdiction under Section 803(c)(4) to modify a determination

implementing an industry settlement:

> In 2009, after the CRJs issued a determination setting the rates and
> terms of royalty payments for making and distribution of
> phonorecords of musical works under 17 U.S.C. 115, the Register
> exercised her statutory authority to correct certain legal errors in
> that determination.  In particular, the Register concluded that a
> number of regulatory terms that the CRJs had adopted were
> inconsistent with the Copyright Act, including certain terms related

---

[7] Thus, these regulations are situated the same as other Board rate regulations for purposes of the Board's continuing jurisdiction under Section 803(c)(4) of the Copyright Act.  *See* 17 U.S.C. § 803(c)(4) (authorizing the Board "to correct any technical or clerical errors in the determination or to modify the terms, but not the rates, of royalty payments in response to unforeseen circumstances that would frustrate the proper implementation of such determination").

> to digital phonorecord deliveries and the retroactivity of
> promotional royalty rates [which were based on an industry
> settlement]. Although the Register lacked the authority actually to
> amend the regulations adopted by the CRJs, she concluded that the
> CRJs could "codify the corrections identified and made herein by
> the Register" by exercising their authority under section 803(c)(4).
> The CRJs subsequently relied on that authority to amend the
> regulations and excise the erroneous regulatory provisions. The
> CRJs explained that doing so would "clarify potential confusion
> facing users of the license at issue" and "promote an efficient
> administration of the applicable license."

80 Fed. Reg. at 25,335 (citations omitted). If it was appropriate for the Board to rely on its

continuing jurisdiction to correct regulations resulting from a Section 115 settlement in 2009, it

would be appropriate in this case for the Board to rely on its continuing jurisdiction to clarify its

business establishment service regulations that also resulted from a settlement.

At the June 5, 2020 status conference, counsel for Music Choice suggested that the board

does not have jurisdiction to accept a referral like that under consideration here, referencing the

D.C. Circuit's decision in *SoundExchange, Inc. v. Muzak LLC*, 854 F.3d 713 (D.C. Cir. 2017).

However, that case was quite different from what is presented here. This case, like the *Sirius XM*

case, turns on interpretation of the Board's regulations. As Judge Leon, the Register and the

Board have all held, Section 803(c)(4) gives the Board continuing jurisdiction to interpret its

regulations and correct technical errors therein. By contrast, the Muzak case turned on

interpretation of a *statutory* provision – the definition of the term "preexisting subscription

service" in 17 U.S.C. § 114(j)(11). There was no issue at all concerning anything in a Board

determination. All that the *Muzak* case had to say about the Board's jurisdiction is that the

parties agreed, and the court accepted, that neither the Board nor the Register have free-ranging

13

authority to take up random questions of statutory interpretation that crop up outside of regularly-scheduled rate-setting proceedings.[8]  That conclusion is not pertinent to this case.

## IV.    Conclusion

For the foregoing reasons, the Court should stay this matter and refer the interpretation of the Board's regulations in 37 C.F.R. § 384.3(a) to the Board under the doctrine of primary jurisdiction.

Dated: July 7, 2020

Respectfully Submitted,

/s/David A Handzo
David A. Handzo (D.C. Bar No. 384023)
Emily L. Chapuis (D.C. Bar No. 1017600)
JENNER & BLOCK LLP
1099 New York Ave., N.W.
Washington, D.C. 20001
(202) 639-6000
dhandzo@jenner.com
echapuis@jenner.com

*Counsel for SoundExchange, Inc.*

---

[8] After oral argument had been held in that case, the D.C. Circuit asked for supplemental briefing as to whether the district court had jurisdiction to hear the parties' dispute, whether the Board and Register of Copyrights instead had jurisdiction, and whether the D.C. Circuit should invoke the doctrine of primary jurisdiction to refer the case to the Board. *Id.* at 718-19; Order at 2, *SoundExchange, Inc. v. Muzak LLC*, Case No. 16-7041 (D.C. Cir. Nov. 16, 2016), Doc. No. 1646415.  After all parties, including the federal government as amicus, counseled that the case had been properly before the district court and was properly before the D.C. Circuit, the court proceeded to decide the appeal on its merits.  *Muzak LLC*, 854 F.3d at 718-19.