**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUNDEXCHANGE, INC.<br>733 10th Street, NW<br>10th Floor<br>Washington, D.C. 20001<br><br>                Plaintiff,<br><br>v.<br><br>MUSIC CHOICE<br>650 Dresher Road, #200<br>Horsham, PA 19044<br><br>                Defendant. | **Civil Action No. 1:2019cv00999**<br><br><br>**AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

1. Plaintiff SoundExchange, Inc. ("SoundExchange") is a non-profit organization authorized to collect and distribute to performing artists and copyright owners certain statutory royalties owed for the use of sound recordings protected under Title 17 of the U.S. Code (referred to herein as the "Copyright Act"). SoundExchange brings this action to recover all royalties that Defendant Music Choice owes to SoundExchange and has not paid, as well as late fees on the unpaid royalties, SoundExchange's costs of conducting a verification of Music Choice's statutory royalty payments, and SoundExchange's costs and attorneys' fees for this action.

2. Under the Copyright Act, certain music service providers such as Music Choice can avail themselves of statutory licenses that permit them to use in their services sound recordings protected by federal law without having to negotiate license agreements with the rights owners. Providers like Music Choice can help themselves to a statutory license by filing a Notice of Use in the Copyright Office pursuant to regulations at 37 C.F.R. § 370.2. Thereafter, a statutory

licensee can use sound recordings in its qualifying service to its commercial advantage so long as it complies with the requirements of the statutory license.  But the statutory licenses are not free: the Copyright Act requires licensees to pay specified royalties on a timely basis for the use of the valuable works licensed under it.

3.      The amount of royalties that a statutory licensee must pay is generally determined in periodic rulemaking proceedings before a U.S. government administrative agency called the Copyright Royalty Board ("CRB"), which consists of three Copyright Royalty Judges appointed pursuant to 17 U.S.C. § 801.  The resulting royalty rates, along with terms of royalty payment, are set forth in regulations promulgated by the CRB pursuant to the Copyright Act and the Administrative Procedure Act.  17 U.S.C. § 803(a)(1).  Under those CRB regulations, the royalties must be paid to SoundExchange.

4.      Music Choice is one of several thousand digital music service providers that rely on the statutory licenses, and it provides several different types of digital music services, including a residential consumer audio service delivered by cable and satellite television providers and an audio service provided to business establishments.  The latter is the focus of this action.  Music Choice describes its "business establishment service" or "BES" as offering "over 50 channels of CD quality music" to help businesses "create the proper ambiance."

5.      Music Choice relies on the statutory license in Section 112(e) of the Copyright Act, 17 U.S.C. § 112(e), to obtain the rights it needs to use sound recordings in its BES.  The statutory royalty rate and payment terms for a BES are set forth in CRB regulations at 37 C.F.R. Part 384. Currently, the basic royalty rate for a BES is 12.5% of the "Licensee's 'Gross Proceeds' derived from the use in such service of musical programs that are attributable to copyrighted recordings." 37 C.F.R. § 384.3(a)(1).

6.     Copyright owners do not have the ability to say "no" to the use of their recordings under the statutory license, and they and SoundExchange have little visibility into the use of sound recordings by digital music services relying on the statutory license, except for the limited reporting that service providers must provide and the opportunity occasionally to have that reporting verified by an independent auditor under the CRB's regulations.

7.     Pursuant to 37 C.F.R. § 384.6, SoundExchange engaged an independent auditor to verify the royalty statements provided by Music Choice to SoundExchange for its BES for the period January 1, 2013 through December 31, 2016.  That process, which SoundExchange initiated in 2016, continued into 2018.  As a result of that verification procedure, Prager Metis CPAs, LLC ("Prager Metis") discovered that Music Choice systematically underpaid statutory royalties for its BES during the period covered by that procedure, by consistently making an allocation of the fees and payments it receives for providing its BES in a manner not contemplated by the CRB's regulations, and as a result, underreporting its "Gross Proceeds" to SoundExchange.   On information and belief, Music Choice engaged in the same conduct before and after that period as well.  On December 18, 2020, SoundExchange initiated an independent audit for the period January 1, 2017 through December 31, 2019.  Initial indications from that audit and trends in Music Choice's royalty payments suggest that Music Choice continued to significantly underreport its "Gross Proceeds."   Upon information and belief, this underreporting has remained Music Choice's practice up through the present and will continue unless remedied by this lawsuit. Because Music Choice has failed to make the required payments to SoundExchange by the applicable due dates for those payments, Music Choice is required to pay late fees on the owed payments in addition to paying the amount of the underpayment.  37 C.F.R. § 384.4(e).  Music Choice has failed to pay the applicable late fees.  Given the magnitude of Music Choice's

underpayment, it is also required to pay SoundExchange's costs of conducting the verification of Music Choice's payments.  *See* 37 C.F.R. § 384.6(g).

## JURISDICTION AND VENUE

8.      This is a civil action seeking damages under the Copyright Act, 17 U.S.C. § 101, *et seq*.  This Court has original subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).  A substantial part of the events giving rise to this suit have occurred in this District, and Music Choice's contacts with the District of Columbia are sufficient to subject it to jurisdiction in this Court.

10.      Music Choice has elected to be bound by the statutory license by filing the required Notice of Use of Sound Recordings with the United States Copyright Office in the District of Columbia; it provides music services throughout the country, including in the District of Columbia; and, it sends statements of account and royalty payments – including partial payments for its BES that is the subject of this lawsuit – to SoundExchange's Washington, D.C. office.

## PARTIES

11.      Plaintiff SoundExchange, Inc. is an independent nonprofit organization organized and existing under the law of the State of Delaware, with its headquarters at 733 10th Street, N.W., 10th Floor, Washington, DC 20001.  The CRB has designated SoundExchange as the sole entity in the United States to collect royalties from statutory licensees and distribute those royalties to performing artists and copyright owners, including for BES.  37 C.F.R. §§ 370.4, 384.4. SoundExchange is also charged with enforcing statutory license requirements and as such, has standing to bring this action.  *See* 17 U.S.C. § 114(g)(3).

4

12.     Defendant Music Choice is a Pennsylvania general partnership, and has its principal place of business at 650 Dresher Road, Horsham, PA 19044.  Music Choice provides various music channel subscription offerings to businesses and individual subscribers, including what it reports to SoundExchange is a BES as contemplated by 17 U.S.C. §§ 112(e)(1) and 114(d)(1)(C)(iv).

## FACTUAL ALLEGATIONS

### A.     The Statutory Framework and Applicable CRB Regulations

13.     Section 106 of the Copyright Act grants the owner of a copyright in a sound recording the exclusive right to reproduce the recording and perform it "publicly by means of a digital audio transmission."  17 U.S.C. § 106(1), (6); *see also id.* § 1401(a).

14.     In the Digital Performance Right in Sound Recordings Act of 1995, Pub. L. No. 104-39, 109 Stat. 336, Congress amended Section 106 of the Copyright Act to grant the public performance right in Section 106(6), but exempted from that exclusive right public performances of sound recordings delivered by means of "a transmission to a business establishment for use in the ordinary course of its business."  17 U.S.C. § 114(d)(1)(C)(iv).

15.     Services making digital transmissions to business establishments need to make reproductions of sound recordings as part of the process of transmitting them, and the exemption from the new performance right did not provide BES providers a convenient mechanism for acquiring rights to make such reproductions.  Congress addressed the need for licensing of such copies in the Digital Millennium Copyright Act, where it added to the Copyright Act a statutory license in Section 112(e) in part to address reproductions made in providing a BES.

16.     The Section 112(e) statutory license allows a BES provider to make copies of sound recordings to facilitate the performances it transmits to business establishments under Section 114(d)(1)(C)(iv), if applicable requirements are met.  The copies licensed under this license are

referred to as "ephemeral" copies, or sometimes "ephemeral recordings," because they can only be used for transmission purposes during a limited time period. See 17 U.S.C. § 112(e)(1)(C). To meet the need of BES providers to make numerous copies of the recordings they use, Section 112(e) contemplates that the CRB may issue regulations allowing for the reproduction of multiple ephemeral copies of each recording. *See* 17 U.S.C. § 112(e)(1). The regulations issued by the CRB so allow. *See* 37 C.F.R. § 384.3(a)(1) (specifying royalty rate "[f]or the making of any number of Ephemeral Recordings in the operation of a Business Establishment Service").

17. In exchange for the privilege of making multiple copies of valuable sound recordings under the statutory license, BES providers must pay statutory royalties at rates prescribed by the CRB's regulations and also report their usage of recordings to SoundExchange. 17 U.S.C. § 112(e)(6). From January 1, 2014 to December 31, 2019, the basic statutory royalty rate was 12.5% of the BES provider's Gross Proceeds. 37 C.F.R. § 384.3(a)(1); *Determination of Rates and Terms for Business Establishment Services*, 78 Fed. Reg. 66,276 (Nov. 5, 2013). Before that, the royalty rate was 10% of the BES provider's Gross Proceeds. *Determination of Rates and Terms for Business Establishment Services*, 73 Fed. Reg. 16,199, 16,200 (Mar. 27, 2008). Between 2020 and 2022, the rate incrementally increased. The rate is currently 13.25% of the BES provider's Gross Proceeds and, in 2023, it will increase to 13.5%. 37 C.F.R. § 384.3(a)(1).

18. The CRB's royalty rate regulations also provide for the payment of late fees by licensees that fail to make the required royalty payments when due. The late fee is currently "1.0% per month, or the highest lawful rate, whichever is lower, if either or both a required payment or statement of account for a required payment is received by the Collective after the due date. Late fees shall accrue from the due date until both the payment and statement of account are received

by the Collective." 37 C.F.R. § 384.4(e).  Prior to January 1, 2014, the late fee was 0.75% per month.  73 Fed. Reg. at 16,201.

19.    Since shortly after enactment of the statutory license, SoundExchange and its predecessor have been designated by the CRB and its predecessors as the collective tasked with collecting and distributing statutory royalties.

20.    The CRB regulations embodying the terms of statutory royalty payments for BES and other types of services using the statutory licenses provide a process that permits SoundExchange to engage an independent auditor to verify the royalty payments made by a statutory licensee.  *E.g.*, 37 C.F.R. § 384.6.  However, SoundExchange has received statutory royalties for nearly 50 BES in one or more of the years in the 2014-2018 BES statutory rate period, and there are several thousand services of different types that rely on the statutory licenses, so it is not practicable for SoundExchange to verify any particular service provider's payments on other than an episodic basis.  When a verification of a BES provider's payments reveals an underpayment of 10% or more, the provider is required to pay SoundExchange's costs of the verification procedure.  37 C.F.R. § 384.6(g).

**B.    Music Choice's Underpayment of BES Royalties**

21.    Music Choice provides several different types of digital music services, including a consumer-oriented audio service delivered by cable and satellite television providers as part of the packages of residential television service they offer.  For regulatory classification purposes, Music Choice represents that service should be treated as a "preexisting subscription service" or "PSS."  *See* 17 U.S.C. § 114(j)(11).

22.    According to Music Choice's website, its BES offers over 50 channels of uninterrupted music, with features such as the ability for Music Choice's customer to control use

of the service in multiple stores from the customer's headquarters.  On information and belief, Music Choice has provided nearly twice that number of channels of audio programming as part of its BES.

23.     On information and belief, Music Choice makes numerous copies of recordings to be able to provide its BES, including copies in a library from which it selects recordings to be played through the service and copies made in the process of delivering the service to business establishments on a day-to-day basis.  Music Choice relies on the Section 112(e) statutory license for the rights it needs to make such copies for use in providing its BES.  Accordingly, Music Choice has remitted statutory royalty payments to SoundExchange for its BES.

24.     Pursuant to 37 C.F.R. § 384.6, SoundExchange engaged Prager Metis to verify the royalty payments provided by Music Choice to SoundExchange for its BES for the period January 1, 2013 through December 31, 2016.  Music Choice did not fully cooperate in that process, among other things, by refusing to provide Prager Metis access to any information pertaining to its activities in 2013.  As a result of that verification procedure, Prager Metis discovered that Music Choice systematically underpaid statutory royalties for its BES during the period covered by that procedure.  Specifically, Prager Metis concluded that SoundExchange was due millions of dollars, including both unpaid royalties based on persistent underreporting of Gross Proceeds and late fees. Pursuant to 37 C.F.R. § 384.6(c), the result of this verification procedure "shall be binding on all parties."  Because the underpayment found by Prager Metis was an underpayment of 10% or more, SoundExchange is entitled to recover its costs of the verification procedure.  37 C.F.R. § 384.6(g).

25.     On information and belief, Music Choice engaged in the same conduct before and after the 2013-2016 verification period as well, which would entitle SoundExchange to a further recovery of statutory royalties and late fees in an amount to be determined at trial.  Pursuant to 37

C.F.R. § 384.6, SoundExchange engaged Prager Metis to verify the royalty payments provided by Music Choice to SoundExchange for its BES for the period January 1, 2017, through December 31, 2019.  Once again, Music Choice has not fully cooperated in that process.  While this second Praeger Metis audit has not concluded, initial indications are that Music Choice has continued to systematically underpay statutory royalties for its BES.  Indeed, based on royalty payments made by Music Choice through the present, its practice of shortchanging SoundExchange has continued unabated.

26.     Music Choice has argued against Prager Metis's conclusion in its 2013-2016 audit. Music Choice has attempted to explain the deficit uncovered by the auditor by claiming that it allocates the fees and payments it receives from providing its BES based on the number of channels it provides, and that it is not required to pay BES royalties on fees and payments it receives from providing its BES to the extent that it allocates such fees and payments to channels that are also included in its PSS service offering.  According to Prager Metis, Music Choice explained to it that Music Choice offers two BES service packages with a set number of channels, and that it paid royalties on the fraction of its actual BES receipts corresponding to the number of channels of music programming provided as part of Music Choice's BES and not provided as part of its PSS. As a result of this allocation, and Music Choice's reporting to SoundExchange of only the allocated fraction as Gross Proceeds, Music Choice hid from SoundExchange the vast majority of the fees and payments it actually received from the provision of its BES.

27.     Music Choice incorrectly interpreted the BES regulations.  When a statutory licensee makes copies of valuable recordings protected under the Copyright Act for use in providing a BES, BES royalties are payable on the fees and payments the BES provider receives from providing its BES.  Delivery of the same music channels to different customers as part of a

different service does not make the use of sound recordings in the BES free of any statutory royalty obligation.

28.    Moreover, the CRB's regulations at 37 C.F.R. § 384.3(a) permit an allocation of BES receipts only on the basis of use of recordings that are, or are not, subject to protection under the Copyright Act, and provide a very specific formula for making such an allocation. Music Choice invented its own formula for the allocation of BES receipts, which is not permitted by the CRB's regulations.

29.    Finally, even if there were a basis in the CRB's regulations for the allocation formula Music Choice invented (and SoundExchange does not believe that there is), the arithmetic that Music Choice explained to Prager Metis does not conform to available information concerning the number of BES channels Music Choice has provided. Music Choice reportedly paid royalties to SoundExchange using an allocation formula that assumed roughly half the number of BES channels than Music Choice appears to have provided. Thus, under any interpretation of the CRB's regulations, it appears that Music Choice has significantly underpaid the required statutory royalties and applicable late fees.

**C.    Late Fees and Verification Procedure Costs**

30.    Because Music Choice has not paid the BES statutory royalties it owes, it must pay late fees on the unpaid amounts. 37 C.F.R. § 384.4(e).

31.    Because Music Choice underpaid its BES royalties by 10% or more, it must pay SoundExchange's costs of the verification of Music Choice's payments. 37 C.F.R. § 384.6(g).

**COUNT ONE**

**(Violation of 34 C.F.R. §§ 384.3 & .4 – Recovery of Unpaid Royalties and Late Fees)**

32.    SoundExchange incorporates by reference paragraphs 1 to 31 as if set forth herein.

33.    Section 112(e) of the Copyright Act provides a statutory license for the making of ephemeral copies to facilitate transmissions made as part of a BES.  17 U.S.C. § 112.  Because Music Choice has chosen to rely on that statutory license, it must make royalty payments to SoundExchange at the rates and on the terms set forth in the CRB's regulations.  37 C.F.R. §§ 384.3, .4(a); *see also* 17 U.S.C. § 112(e)(6).

34.    Music Choice's payments to SoundExchange for its BES must be calculated as a percentage of Music Choice's Gross Proceeds.  37 C.F.R. § 384.3(a).

35.    Music Choice has systematically excluded from the Gross Proceeds royalty base used in calculation of its royalty payments and reporting to SoundExchange the vast majority of the fees and payments it receives from providing its BES.  That is not permitted by Section 112(e) or the CRB's regulations, and even if the regulations permitted a channel-based allocation of BES receipts (which SoundExchange does not believe they do), Music Choice has provided more BES channels that are not part of its PSS than it has paid royalties for.

36.    Music Choice's unauthorized exclusions from Gross Proceeds impermissibly reduced (and continue to reduce) the statutory royalty payments that Music Choice makes to SoundExchange.   Accordingly, the unauthorized exclusions, and consequent underpayments, contravened the requirement in the CRB's regulations that a BES "Licensee shall make the royalty payments due under § 384.3" to SoundExchange.  37 C.F.R. § 384.4(a); *see also* 17 U.S.C. § 112(e)(6).

37.    Because Music Choice did not pay royalties it owes to SoundExchange on a timely basis, it must pay late fees on the unpaid amounts.  37 C.F.R. § 384.4(e).  Music Choice has not paid such late fees to SoundExchange.

38.     Music Choice's improper actions have deprived SoundExchange of millions of dollars to which SoundExchange is entitled under the CRB's regulations.

## COUNT TWO

### (Violation of 37 C.F.R. § 384.6(g) – Recovery of Unpaid Verification Fees)

39.     SoundExchange incorporates by reference paragraphs 1 to 38 as if set forth herein.

40.     Music Choice's failure to make royalty payments to SoundExchange as required by the CRB's regulations was discovered by SoundExchange when Prager Metis conducted a verification of Music Choice's royalty payments for the period 2013-2016.  The extent of the underpayment substantially exceeded 10% of Music Choice's royalty obligation for the period 2013-2016.  Accordingly, Music Choice is obligated to pay SoundExchange's reasonable costs of the verification of Music Choice's payments.  37 C.F.R. § 384.4(g).  Music Choice has not paid such costs to SoundExchange.  In addition, SoundExchange initiated an audit for the period 2017-2019.  While that audit has not concluded, initial indications are that Music Choice has underpaid by substantially more than 10% of its royalty obligation for this period.  If the final audit reaches this conclusion, then Music Choice will be liable for those reasonable costs of verification as well.

41.     Music Choice's improper actions have deprived SoundExchange of at least $35,000 to which SoundExchange is entitled under the CRB's regulations.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, SoundExchange respectfully prays for judgment against Music Choice as follows:

a.   For compensatory damages in such amounts to be determined at trial arising from Music Choice's underpayment of royalties and late fees as required by the statutory license regulations;

b.   For SoundExchange's costs of verifying Music Choice's royalty payments for the periods 2013-2016 and 2017-2019;

c.   For SoundExchange's costs and attorneys' fees in connection with this action pursuant to 17 U.S.C. § 505; and

d.   For any other relief the Court deems just and proper.

Dated:  August 17, 2022                                    Respectfully submitted,

                                                            /s/Emily L. Chapuis

                                                            Emily L. Chapuis (D.C. Bar # 1017600)
                                                            JENNER & BLOCK LLP
                                                            1099 New York Avenue NW Suite 900
                                                            Washington, DC 20001
                                                            (202) 639-6000

                                                            *Counsel for Plaintiff SoundExchange, Inc.*